IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARY KIRKENDOLL, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SMYRNA, | ) | CIVIL ACTION FILE |
| MAX BACON, Mayor, | ) | NO. 1:11-cv-01306-CAP |
| RANDY BLACK, and | ) | |
| OFFICERS WILLIAMS, | ) | |
| OWENS, THACKER, | ) | |
| HUTTO, MILLSAPS, and | ) | |
| BRANYON, Officers of the City of | ) | |
| Smyrna Police Department, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED VERIFIED COMPLAINT

Plaintiff Mary Kirkendoll (hereinafter "Ms. Kirkendoll") hereby brings this

Amended Verified Complaint seeking damages and declaratory and injunctive

relief for the violations of her First and Fourth Amendment rights under the United

States Constitution and corollary rights under the Georgia Constitution, and for her

false imprisonment, false arrest, and harassment by Smyrna Police during and after

her lawful political comments during a Smyrna Town Hall meeting.

## JURISDICTION AND VENUE

1.

This action arises under the authority vested in this Court by virtue of 42 U.S.C. § 1983, 42 U.S.C. § 1985, 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367 (pendent jurisdiction). Venue is proper in this Court.

## PARTIES AND SERVICE

2.

Plaintiff, Mary Kirkendoll, is a resident of the City of Smyrna, Georgia, who was unlawfully arrested for speaking at a Smyrna Town Hall meeting.

3.

Defendant City of Smyrna is a city chartered under the laws of the State of Georgia, and is subject to the jurisdiction and venue of this Court. Service of process may be effected upon Mayor Max Bacon or City Administrator Eric Taylor. Service of the Summons and Verified Complaint may be acknowledged. If Defendant City of Smyrna does not acknowledge service, service may be perfected as allowed by law.

4.

Defendant Max Bacon was at all times herein mentioned the Mayor of the City of Smyrna. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual and in his

2

official capacity. Service of the Summons and Verified Complaint may be acknowledged. If Defendant Max Bacon does not agree to acknowledge service, service may be perfected as allowed by law.

5.

Defendant Randy Black was at all times herein mentioned a police officer of the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity. Service of the Summons and Verified Complaint may be acknowledged. If Defendant Black does not agree to acknowledge service, service may be perfected as allowed by law.

6.

Defendant Officer Williams was at all times herein mentioned a police officer of the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity. Service of the Summons and Verified Complaint may be acknowledged. If Defendant Officer Williams does not agree to acknowledge service, service may be perfected as allowed by law.

7.

Defendant Officer Owens was at all times herein mentioned a police officer of

3

the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity. Service of the Summons and Verified Complaint may be acknowledged. If Defendant Officer Owens does not agree to acknowledge service, service may be perfected as allowed by law.

8.

Defendant Officer Thacker was at all times herein mentioned a police officer of the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity. Service of the Summons and Verified Complaint may be acknowledged. If Defendant Officer Thacker does not agree to acknowledge service, service may be perfected as allowed by law.

9.

Defendant Officer Hutto was at all times herein mentioned a police officer of the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity. Service of the Summons and Verified Complaint may be acknowledged. If Defendant Officer Hutto does not agree to acknowledge service, service may be perfected as allowed by law.

4

10.

Defendant Officer Millsaps was at all times herein mentioned a police officer of the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity. Service of the Summons and Verified Complaint may be acknowledged. If Defendant Officer Millsaps does not agree to acknowledge service, service may be perfected as allowed by law.

11.

Defendant Officer Branyon was at all times herein mentioned a police officer of the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity. Service of the Summons and Verified Complaint may be acknowledged. If Defendant Officer Branyon does not agree to acknowledge service, service may be perfected as allowed by law. Defendants Randy Black and Officers Williams, Owens, Thacker, Hutto, Millsaps, and Branyon are hereinafter collectively referred to as the "Defendant Officers."

## FACTUAL ALLEGATIONS

12.

Ms. Kirkendoll is a petite woman who is a longtime resident of the City of Smyrna (hereinafter "the City").

13.

Ms. Kirkendoll is also a political activist who frequently made public comments on and engaged in public debate about political issues facing the City.

14

Ms. Kirkendoll has fervently sought to expose what she perceives to be corruption within the City and to heighten public awareness of what she believes is the City's failure to address or remedy important social issues.

15.

More specifically, Ms. Kirkendoll has accused the Mayor, City Council, law enforcement, City attorneys, government employees, and contractors of intentionally ignoring immigration laws and criminal activity to advance their own self interests by allowing methamphetamine labs to flourish and by indirectly hiring illegal aliens on City construction projects. She also expresses concern over depressed home prices and poor quality of life within the City, which she attributes to the influx of illegal immigrants and the vacant lots of property purchased by

6

local developers but left undeveloped.

16.

Ms. Kirkendoll has also advocated for the adoption of the Federal 287(g) program within the City, which would provide City law enforcement with training on and assistance with the enforcement of immigration laws.  Although Cobb and Gwinnett Counties have succeeded in effectuating such a program, her public suggestion to adopt the program in the City has received nothing but resistance from City officials and law enforcement.

17.

Ms. Kirkendoll publicly commented on these issues by writing letters to local newspapers and government officials, posting on internet message boards, and giving presentations to the City Council.

18.

To the annoyance of the City, she has also submitted numerous open records requests and then publicly commented on her findings during City Council meetings and by writing letters published in the Marietta Daily Journal.

19.

On March 1, 2009 Ms. Kirkendoll gave a presentation to the City Council regarding her concerns about illegal aliens living and working in the City, which

can be viewed at: http://www.youtube.com/watch?v=10QW0xxm9YU.

20.

At the end of the presentation, Ms. Kirkendoll unrolled a small hand-held Mexican flag and stated "[t]onight, Mayor Bacon, I want to present you with the flag from Mexico." Defendant Max Bacon immediately interrupted Ms. Kirkendoll and sought to terminate her presentation by stating "[t]hank you for your comment. Next speaker please. You're out of order."



21.

Ms. Kirkendoll continued her presentation and stated, "I want to ask you – which flag do you want to fly over your City Hall?  I hope you make the right choice."  Defendant Max Bacon kept repeatedly asking for the "next speaker."  Ms. Kirkendoll then walked up to Defendant Max Bacon's bench to give him the flag.

8

He backed away from her and exclaimed with obvious disgust "I don't want to touch it.  Get that away from me" as she gently laid the flag on the podium.



22.

A videotape of the presentation was publicly posted by a third party on YouTube on March 7, 2009.  The video turned Ms. Kirkendoll's presentation into political propaganda that exposed and humiliated the City.

9







23.

The video has been viewed approximately 750 times and is the second

search result that comes up for an internet search using the terms "Max Bacon

Smyrna."

24.

The YouTube video received several positive comments lauding Ms.

Kirkendoll's political drive.  For example, two comments state "I support this lady

100%" and "if our elected officials acted with as much integrity as she does we

would not have the problem in the first place."

25.

Officials and employees of the City were offended by and frustrated with

Ms. Kirkendoll's public criticisms and the popularity of the YouTube video, and accordingly regarded her with hostility and extreme dislike.

26.

The Smyrna Mayor, Defendant Max Bacon, has retaliated against Ms. Kirkendoll's criticisms and political activities by publically chastising her. At one council meeting, he called Ms. Kirkendoll "vile" and stated that he "wish[ed] she would move" away from Smyrna.

27.

Smyrna Jail Manager Black has also chastised Ms. Kirkendoll when she went to the jail to retrieve public records. He loudly called Ms. Kirkendoll a "racist," "bigot," and "troublemaker" within earshot of several jail employees.

28.

The City has historically had a public comment section during Council meetings for citizen input on issues affecting the City. However, Plaintiff and other citizens objected that there was never a time when the Council would respond to questions during council meetings.

29.

Due to public demand for a question/answer session with Council members, the City decided to have a question/answer session at the Town Hall meeting during the

"close of the presentation." Attendees were to "submit written questions which [would] be addressed immediately following intermission."

30.

The question/answer session of the Smyrna Town Hall meeting constitutes a "public forum" within the meanings of the United States and Georgia Constitutions.

31.

Upon information and belief, the City made plans to ensure that Ms. Kirkendoll would not have any opportunity to speak or otherwise express her views during the meeting out of fear that she would create another scene that would embarrass the City.

32.

Upon information and belief, the City hired or assigned at least eight uniformed police officers, two park rangers, and undercover police officers to keep a watchful eye on Ms. Kirkendoll during the meeting.

33.

Upon information and belief, the officers were instructed and charged to take immediate action against Ms. Kirkendoll if she attempted to speak during the meeting.

34.

The officers were aware of Smyrna Local Ordinance § 66-3 and upon

13

information and belief, were told that the ordinance could be used against Ms. Kirkendoll.

35.

Smyrna Local Ordinance § 66-3 makes it illegal to "quarrel or fight, or use obscene, vulgar or profane language within the city, or to otherwise act in a disorderly manner or behave in any way contrary to public peace or morality to the disturbance of any citizen of the city."

36.

On April 21, 2009, Ms. Kirkendoll rode to the Town Hall meeting with her friend, Jill Benson.

37.

When Ms. Kirkendoll arrived at the Town Hall meeting at about 6:15 PM, she signed the attendance sheet.  Ms. Kirkendoll and Ms. Benson then staged a peaceful protest outside the Community Center on the public sidewalk. They held signs that stated their concerns regarding City government.

38.

At about 6:45 PM, Ms. Kirkendoll and Ms. Benson went back inside the Community Center.  They left their signs outside as they were directed to do.

14

39.

Ms. Kirkendoll was given a note card on which to write her questions for the

Council.  Ms. Kirkendoll was informed that the note cards would be collected and

selected questions would be read aloud.

40.

Before the meeting began, and while numerous other meeting-goers were

standing about the room and engaged in conversation, Ms. Kirkendoll went to speak

with Marc Picard of WXIA 11 News, the moderator for the meeting, who was sitting

down and looking through some papers.

41.

While Ms. Kirkendoll was speaking to Mr. Picard, Jennifer Bennett, Director of

Communications for the City, instructed Ms. Kirkendoll to sit down immediately.

42.

Ms. Kirkendoll replied that "the meeting hasn't started.  I can talk to Marc."

43.

Ms. Bennett tersely ordered Ms. Kirkendoll to sit down a second time and

threatened to have Ms. Kirkendoll escorted out of the meeting if she did not comply.

44.

Ms. Bennett did not instruct any of the other meeting-goers to sit down or to

stop speaking.

45.

Ms. Kirkendoll promptly sat down in the second row. The Town Hall meeting began with a 45-minute public relations presentation about the City of Smyrna. Following intermission, the meeting reconvened with the scheduled question-and-answer session.  Questions submitted by attendees were read from the note cards.

46.

Ms. Kirkendoll believed that the City had carefully selected only questions directed to a favorable viewpoint for the City.

47.

Frustrated with what she perceived to be the City's failure to address the tough issues, Ms. Kirkendoll and Ms. Benson decided to leave the meeting.

48.

Ms. Kirkendoll and Ms. Benson walked quietly to the back of the room towards the exit.

49.

While walking towards the exit door, Ms. Kirkendoll passed Mayor Max Bacon.  She initially stated, "You win tonight, Mayor."

50.

As she continued toward the exit, Ms. Kirkendoll turned to the audience and stated, "This is bullshit – they are never going to tell the truth."

51.

Ms. Kirkendoll did not speak loudly enough to be recorded on the City's videotape of the meeting, a copy of which was included in the Solicitor's file, and there was absolutely no interruption of the meeting. No citizen objected to or became violently aroused by Ms. Kirkendoll's use of profanity.

52.

Ms. Kirkendoll never intended to disrupt the meeting. Rather, her choice of the word "bullshit" was more emotive than cognitive in that it was meant to communicate her frustration with the meeting.

53.

Ms. Kirkendoll continued to proceed to the exit, walking past numerous rows of seats. After she had walked about fifteen feet past her chair and towards the exit, a man dressed in khakis and a plain shirt approached her from behind and grabbed her arm to effectuate an arrest.

54.

The man aggressively pulled Ms. Kirkendoll out of the auditorium by her arm,

stating "You're coming with me." The man squeezed Ms. Kirkendoll's arm so tightly that he bruised her arm.

55.

Ms. Kirkendoll told the man she was leaving on her own and there was no need to escort her out.

56.

The man continued to pull Ms. Kirkendoll out the door and repeatedly stated, "Quit resisting."

57.

At this point, the man identified himself as a police officer.

58.

According to the Citation and Incident/Investigation Report, the officer was Defendant Williams.   See   Citation,   attached   as   Exhibit   A;   see also Incident/Investigation Report, attached as Exhibit B.

59.

According to Defendant Williams' narrative in the Incident/Investigation Report, Defendants Owens, Hutto, and Branyon, all of whom were City police officers, rushed over to help Defendant Williams escort Ms. Kirkendoll out of the building. See Exhibit B.

18

60.

Outside of the auditorium, Ms. Kirkendoll was arrested and placed in handcuffs by the officers, acting jointly. Defendant Williams issued her a citation for violating Smyrna Local Ordinance § 66-3, stating "subject at community meeting cursing in front of women/children, refused to be escorted out of building. See Exhibit A.

61.

Ms. Kirkendoll was placed in the back of a police car by the officers and taken to jail. Upon information and belief, the police car was driven by Defendant Thacker.

62.

Ms. Kirkendoll was searched at the jail by an unknown female police officer. She was then questioned for about 30 minutes by a male officer.

63.

Ms. Kirkendoll was held in a jail cell until she was released on her own recognizance by 10:00 p.m.

64.

Plaintiff was held illegally for over two hours.

65.

After Ms. Kirkendoll had been arrested, but before the Town Hall meeting concluded, the moderator asked two questions about compliance with enforcement

of immigration laws.  Less than two minutes later, Defendant Max Bacon stated "Stan [the police chief] does a good job.  Some folks are just prejudiced.  I don't care what the color of your skin is, you are welcome in Smyrna.  I'll never tolerate anyone that's prejudiced toward any other nationality."

66.

The Incident/Investigation Report lists Defendant Williams as the reporting officer and Defendants Owens, Hutto, Branyon, Thacker, and Millsaps as assisting officers in the arrest.  See Exhibit B.

67.

The search and arrest of Ms. Kirkendoll was without probable cause or reasonable suspicion of criminal activity and was intended to chill her speech and serve as retaliation for her negative comments.

68.

Officer Williams falsely noted in his Incident/Investigation Report that he smelled a strong odor of alcohol on Ms. Kirkendoll at the time of her arrest.  The report also falsely states that Ms. Kirkendoll said "This is bullshit!" twice in front of members of the general public and small children.  See Exhibit B.

69.

Ms. Kirkendoll was not under the influence of alcohol at any point during the

course of the evening.

70.

Indeed, despite the report's allegation that Ms. Kirkendoll was intoxicated at the time of the arrest, Ms. Kirkendoll's car keys were returned to her and she was allowed to drive home after she was released from jail.

71.

Upon information and belief, Defendants Williams, Owens, Hutto, Branyon, Thacker, and Millsaps had received POST training or other training regarding probable cause and the constitutionality of laws.

72.

Defendants Williams, Owens, Hutto, Branyon, Thacker, and Millsaps knew or should have known at the time of the arrest that charging Ms. Kirkendoll for violating Smyrna Local Ordinance § 66-3 constituted an unconstitutional violation of her right to free speech as guaranteed by the First Amendment to the United States Constitution.

73.

Under Monell v. Dept. of Soc. Serv., 436 U.S. 658 (1978), the City may be held liable for the unconstitutional acts of the other Defendants, as the unconstitutional Smyrna Ordinance constitutes a "policy" adopted by the City that

was the driving force behind Ms. Kirkendoll's injuries.

74.

As a result of the outrageous and unlawful conduct by Defendants alleged herein and the enforcement of an unconstitutional ordinance, Ms. Kirkendoll suffered – and still continues to suffer – emotional distress.

75.

Although Ms. Kirkendoll feels it is her duty to remain active with City issues, she also feels fearful and unsafe in exercising her constitutionally protected rights to free speech and to petition the government.

76.

Numerous citizens of Smyrna have ridiculed Ms. Kirkendoll for her arrest and the false allegation that she was intoxicated during the arrest.

77.

Defendants caused criminal charges to be filed against Ms. Kirkendoll in retaliation for her vocal criticism of the City of Smyrna and its officials during the April 21, 2009, Town Hall meeting and her prior criticisms about the City.

78.

Ms. Kirkendoll was ordered to make her first court appearance in Municipal Court on June 30, 2009.

79.

Ms. Kirkendoll's counsel repeatedly attempted to convince the City Solicitor
to dismiss the charges, explaining the obvious violation of Ms. Kirkendoll's
constitutional right of free speech.

80.

Yet, despite the clear unconstitutionality of the Smyrna ordinance, the City
Solicitor adamantly refused to dismiss the charges and said that his only plea offer
would require Ms. Kirkendoll to admit wrong-doing and take anger management
classes.

81.

The City Solicitor further implied that his hands were tied due to political
pressure from the City to pursue Ms. Kirkendoll's prosecution.

82.

Ms. Kirkendoll refused to accept the plea bargain and demanded a jury trial,
which resulted in the criminal prosecution being transferred to State Court.   An
accusation was drafted against Ms. Kirkendoll on May 13, 2010 and the case was
assumed against her.

83.

Despite attempts by Ms. Kirkendoll's counsel to persuade the ADA to drop the charges due to the unconstitutionality of the underlying ordinance, arrest, and charges, Ms. Kirkendoll was required to appear in State Court for her arraignment on June 4, 2010.

84.

The ADA eventually agreed to review the legal arguments set forth by Ms. Kirkendoll's counsel, who prepared and filed a dispositive motion to dismiss the charges on June 14, 2010.  See Motion to Dismiss, attached as Exhibit C.

85.

The ADA nevertheless refused to dismiss the case and Ms. Kirkendoll was required to attend a calendar call on October 7, 2010.

86.

During the calendar call, counsel informed the Judge that a dispositive motion had been filed and that Ms. Kirkendoll wished to be heard by the Court prior to trial.  When the Judge asked for the basis of the motion, and counsel explained that Ms. Kirkendoll had been arrested for saying the word "bullshit" during a meeting in violation of her constitutional rights, the Judge responded "sounds like BS to me."  Twelve days later, ante litem notice was sent to all of the Defendants in this case.

87.

Barry Morgan, the Solicitor General of Cobb County, was ultimately approached and was presented with the facts of the case and the legal arguments regarding the unconstitutionality of the Smyrna Ordinance.

88.

On December 15, 2010, over a year and a half after Ms. Kirkendoll's arrest, the Honorable Craig Bowers, Judge of the State Court of Cobb County, was presented with a Motion to Nolle Prosse, or dismiss, the false charges and accusations against Ms. Kirkendoll.

89.

The Honorable Craig Bowers signed an order dismissing the false charges.

## CLAIMS FOR RELIEF

## COUNT ONE

## VIOLATION OF THE FIRST AMENDMENT PURSUANT TO 42 U.S.C. § 1983 (Ordinance is unconstitutionally vague and overbroad on its face)

90.

The allegations of paragraphs 1 through 89 are incorporated into the First Claim for Relief as though fully set forth herein.

91.

Defendants violated Ms. Kirkendoll's First Amendment rights of free speech in arresting her under a facially invalid, vague, and overbroad, ordinance, Smyrna Local Ordinance § 66-33, that purports to prohibit the use of "obscene, vulgar or profane language within the city." "Vulgar" or "profane" language often is essential to political speech and other forms of criticism and lies at the core of what is protected by the First Amendment. A statute purporting to criminalize such speech is facially invalid for substantial overbreadth and therefore constitutes a deprivation of liberty without due process of law in violation of the Due Process clause of the Fourteenth Amendment.

92.

The fact that Smyrna Local Ordinance § 66-33 violated the First Amendment was a clearly established law of which a reasonable law enforcement officer would have known. Indeed, the United States Supreme Court has held that under the First and Fourteenth Amendments, the government may not criminalize the "simple" utterance of a "single... expletive." Cohen v. California, 403 U.S. 15, 26 (1971).

93.

In violating Ms. Kirkendoll's rights under the First Amendment to the United States Constitution, Defendants directly and proximately caused her to suffer unlawful arrest, detention, search of her person, anguish, embarrassment, and humiliation.

## COUNT TWO

## VIOLATION OF THE FIRST AMENDMENT PURSUANT TO 42 U.S.C. § 1983 (Retaliation)

94.

The allegations of paragraphs 1 through 93 are incorporated into the Second Claim for Relief as though fully set forth herein.

95.

On April 21, 2009, all Defendants actively initiated and procured the arrest and prosecution of Ms. Kirkendoll in a criminal action in retaliation for her vocal criticism of the City and its law enforcement, and in retaliation for her presentation to the City Council that was posted on YouTube.

96.

Defendants acted without even arguable probable cause in initiating and procuring the arrest of Ms. Kirkendoll.

27

97.

Defendants acted with malice in initiating and procuring the arrest of Ms. Kirkendoll.

98.

Defendants' retaliatory acts violated Ms. Kirkendoll's rights under the First Amendment of the United States Constitution.

99.

In violating Ms. Kirkendoll's rights under the First Amendment to the United States Constitution, Defendants directly and proximately caused her to suffer unlawful arrest, detention, search of her person, anguish, embarrassment and humiliation.

**COUNT THREE**

**VIOLATION OF THE FOURTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983**

100.

The allegations of paragraphs 1 through 99 are incorporated into the Third Claim for relief as though fully set forth herein.

28

101.

Defendants violated Ms. Kirkendoll's Fourth Amendment right to be free of unlawful seizure of the person by grabbing her arm to pull her out of the meeting and by arresting her without even arguable probable cause to believe that she had committed a crime. But for application of the facially invalid Smyrna Local Ordinance § 66-33, Defendants could not have arrested Ms. Kirkendoll.

102.

That there can be no arguable probable cause to arrest for a nonexistent crime was a clearly established law of which a reasonable law enforcement officer would have known. That the reported crime was nonexistent follows from the fact that Smyrna Local Ordinance § 66-33 is unconstitutional for the reasons stated above in ¶ 57, which are here incorporated by reference.

103.

Ms. Kirkendoll's arrest was objectively unreasonable.

104.

In violating Ms. Kirkendoll's rights under the Fourth Amendment to the United States Constitution, Defendants directly and proximately caused Ms.

Kirkendoll to suffer unlawful arrest, detention, anguish, embarrassment and humiliation.

105.

The overwhelming majority of ordinance violations are dealt with by citation and not by arrest.  The fact that the City directed, and that the Defendant Officers used, the most extreme measure -- an unlawful detention of Ms. Kirkendoll's liberty -- for such a minor ordinance violation shows the true motivation of the named Defendants in this action.

<b>COUNT FOUR</b>

<b>VIOLATION OF 42 U.S.C. § 1985 (Conspiracy to Violate Civil Rights)</b>

106.

The allegations of paragraphs 1 through 105 are incorporated into the Fourth Claim for relief as though fully set forth herein.

107.

Defendants Max Bacon and the City of Smyrna conspired with Defendant Officers of the City of Smyrna Police Department to violate Ms. Kirkendoll's First Amendment civil rights.

30

## COUNT FIVE

## FALSE IMPRISONMENT

### 108.

The allegations of paragraphs 1 through 107 are incorporated into the Fifth

Claim for relief as though fully set forth herein.

### 109.

By detaining Ms. Kirkendoll without legal authority, her detention was

unlawful and Defendants falsely imprisoned her in violation of O.C.G.A. § 16-5-

41.

## COUNT SIX

## FALSE ARREST

### 110.

The allegations of paragraphs 1 through 109 are incorporated into the Sixth

Claim for relief as though fully set forth herein.

### 111.

By maliciously arresting Ms. Kirkendoll under process of law, without probable

cause, Defendants falsely arrested her in violation of O.C.G.A. § 51-7-1.

## COUNT SEVEN

## MALICIOUS PROSECUTION

### 112.

The allegations of paragraphs 1 through 111 are incorporated into the Sixth Claim for relief as though fully set forth herein.

### 113.

The City of Smyrna continued the violation of Ms. Kirkendoll's Constitutional rights by insisting that it wished to pursue this matter despite being presented with the facts and the law.

### 114.

The City of Smyrna thereby violated O.C.G.A. § 51-7-44 and maliciously prosecuted Ms. Kirkendoll in furtherance of the desires of the other Defendants without probable cause and in violation of Ms. Kirkendoll's Constitutional rights.

## PRAYERS FOR RELIEF

WHEREFORE, on the basis of the foregoing, Plaintiff prays that this Court:

(1)    Enter an award of economic, compensatory, general, and special damages in an amount to be determined by the enlightened conscience of the jury against defendants City of Smyrna, et al;

32

(2)    Enter a preliminary and permanent injunction against Defendants, their

officers, agents, successors, employees, attorneys, and those acting in

concert with them, from any future, non-pending prosecution under the

unconstitutional ordinance;

(3)    Award Ms. Kirkendoll punitive damages in the amount to be

determined by the enlightened conscience of the jury against

defendants City of Smyrna, et al;

(4)    Grant to Plaintiff a jury trial on all issues so triable;

(5)    Award to Plaintiff the costs of the action and reasonable attorney's

fees, as provided by 42 U.S.C. § 1988 and federal and state law;

(6)    Grant any and all additional relief as this Court deems proper and just.

DATED: This _____ day of April, 2011.

By:    _____
       Cynthia L. Counts
       Georgia Bar No. 190280

Counts Law Group
400 Colony Square, Suite 2020
1201 Peachtree Street, NE
Atlanta, Georgia 30361
Telephone: (404)685-8271
Facsimile: (404)521-0413
Email: ccounts@lawcounts.com

       _____
       Kenneth B. Hodges
       Georgia Bar No. 359155

33

Ashe, Rafuse & Hill, LLP
1355 Peachtree Street, N.E.
Suite 500
Atlanta, GA 30309
Telephone: (404) 253-6005
Facsimile: (404) 253-6060
Email: kenhodges@asherafuse.com

 

                                               _____

                                               Gerald Weber
                                               Georgia Bar No. 744878

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Telephone: (404) 522-0507
Email: wgerryweber@gmail.com

## Local Rule 7.1(D) Certificate

This is to certify that the foregoing VERIFIED COMPLAINT has been prepared with one of the font and point selections approved by the Court in LR 5.1B: Times New Roman, 14 point.

_____

Cynthia L. Counts, Esq.

# Exhibit A

**INCIDENT/INVESTIGATION REPORT**

| | |
|---|---|
| Agency Name | |
| Smyrna Police Department | |
| ORI   GA 0330400 | |

| Case# | 09-040516 |
|---|---|
| Date / Time Reported | 04/21/2009  20:41  Tue |
| Last Known Secure | 04/21/2009  20:41  Tue |
| At Found | 04/21/2009  20:41  Tue |

**INCIDENT DATA**

Location of Incident: 200 Village Green Cir Se, Smyrna GA 30080-

Premise Type: ____  Zone/Tract: A

| | Crime Incident(s) | (Com) | Weapon / Tools | | | Security | Activity |
|---|---|---|---|---|---|---|---|
| #1 | Disorderly Conduct  5311 | M | Entry | Exit | | | |
| #2 | Crime Incident | ( ) | Weapon / Tools | | | Security | Activity |
| | | | Entry | Exit | | | |
| #3 | Crime Incident | ( ) | Weapon / Tools | | | Security | Activity |
| | | | Entry | Exit | | | |

MO

**VICTIM**

# of Victims: 1   Type: SOCIETY/PUBLIC   Injury:   Domestic: N

| | Victim/Business Name (Last First Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| V1 | State Of Georgia | 1. | Age | | | | | |

Home Address | Home Phone

Employer Name/Address | Business Phone | Mobile Phone

| VYR | Make | Model | Style | Color | Tie/Li s | VIN |
|---|---|---|---|---|---|---|

**OTHERS INVOLVED**

CODES:  V= Victim (Denote V2, V3)   O = Owner (if other than victim)   R = Reporting Person (if other than victim)

Type:   Injury:

| Code | Name (Last, First  Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | | | Age | | | | | |

Home Address | Home Phone

Employer Name/Address | Business Phone | Mobile Phone

Type:   Injury:

| Code | Name (Last, First  Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | | | Age | | | | | |

Home Address | Home Phone

Employer Name/Address | Business Phone | Mobile Phone

**PROPERTY**

1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged / Vandalized   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Officer/ID#  WILLIAMS, G. F. (26413)

Invest ID#  (0)   Supervisor  (0)

**Status**

Complainant Signature | Case Status: Cleared By Arrest  04 21 2009 | Case Disposition: | Page 1

Printed By: REATON, COURT01 | Sys#: 95308 | 04/22/2009 10:29:08

CIDENT/INVESTIGATION REPOT

Page 2

By REATON COURT01   04/22/2009 10:29

*Smyrna Police Department*

Case# 09-040516

| Status Codes | | 1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown | | | |
|---|---|---|---|---|---|
| | IBR | Status | Quantity | Type Measure | Suspected Type | Up to 3 types of activity |

D
R
U
G
S

Assisting Officers
OWENS, K (24449), THACKER, B (24436), HUTTO, J C (24616), MILLSAPS, L G (24199), BRANYON, S (22060)

Suspect Hate / Bias Motivated:

NARRATIVE

## REPORTING OFFICER NARRAT

| | | OCA |
|---|---|---|
| Smyrna Police Department | | 09-040516 |
| Victim | Offense | Date / Time Reported |
| Society | DISORDERLY CONDUCT | Tue 04/21/2009 20.41 |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

ON 042109 AT APPROXIMATELY 2041 HOURS I WAS WORKING SECURITY IN PLAIN CLOTHES, AT 200 VILLAGE GREEN CIRCLE, SMYRNA COMMUNITY CENTER. I OBSERVED THE OFFENDER: MARY EVANS KIRKENDOLL, DOB: 032256, W/F, SITTING IN A CHAIR NEAR THE FRONT OF THE AUDITORIUM. I HEARD HER GET UPSET AND SAY, "CAN WE TALK ABOUT SOMETHING MORE INPORTANT, WHEN A SPEAKER WAS SPEAKING AT THE POTIUM. AFTER APPROXIMATELY TEN MINUTES, KIRKENDOLL GOT OUT OF HER SEAT, AND STATED TO MAYOR BACON, THE CITY OF SMYRNA MAYOR, "YOU WON THIS TIME, THIS IS BULLSHIT" WHILE IN THE PRESENCE OF SMALL CHILDREN AND FAMILY MEMBERS.
I WAS SITTING IN THE BLEACHERS NEAR THE FRONT OF THE AUDITORIUM AND OBSERVED KIRKENDOLL BEGIN TO WALK IN FRONT OF ME. I MADE CONTACT WITH HER ON THE WALKWAY NEAR THE BLEACHERS AND ADVISED I WAS OFFICER WILLIAMS WITH THE SMYRNA POLICE DEPARTMENT, AND ATTEMPTED TO ESCORT HER OUT OF THE AUDITORIUM. AS I ATTEMPTED TO ESCORT HER OUT OF THE AUDITORIUM, I SMELLED AN ODOR OF AN ALCOHOLIC BEVERAGE COMING FROM HER PERSON.
OFFICER HUTTO, CPL OWENS, AND OFFICER BRANYON ASSISTED ME WITH ESCORTING KIRKENDOLL OUT OF THE BUILDING, AND SHE BEGAN TO PULL AWAY FROM ALL OFFICERS. KIRKENDOLL WAS PLACED INTO RESTRAINTS AND TRANSPORTED TO THE SMYRNA JAIL UNDER CITATION NUMBER 428659, BY CPL THACKER. KIRKENDOLL WAS CHARGED WITH DISORDERLY CONDUCT.
[04/21/2009 22:54, GWILLIAMS, 47, SPD]

## Exhibit B

Case 1:11-cv-01306-CAP Document 1-9 Filed 04/27/11 Page 41 of 63

Court Case Number

SS NR-GA 0330400
NCIC Number

Citation Number
428659

# CITY OF SMYRNA POLICE DEPARTMENT

Month **APRIL** (Day) **21** (Year) **2009** at **2041** ☐ A.M. ☐ P.M.

Operator License No. **049816339**

License Class or Type **C** State **GA** Endorsements Expires **2014**

Name **KIRKENDALL, MARY EVANS**
(Last) (First) (Middle)

Address **1678 OAKVIEW DR SE**

City **Smyrna** State **GA** Zip Code **30080**

DOB **023256** Hair **RED** Hgt **502** Wgt **125** Sex **F** Eyes **BRO**

Veh. Yr. ____ Make ____ Style ____ Color ____

Registration No. ____ Yr. ____ State ____

COMMERCIAL DRIVER LICENSE ☐ YES ☒ NO   COMMERCIAL VEHICLE ☐ YES ☒ NO   ACCIDENT ☐ YES ☒ NO

(ONE VIOLATION PER CITATION) ☐ DRIVER REQUESTED ACCURACY CHECK ☐ VASCAR ☐ LASER ☐ RADAR
Within the State of Georgia, did commit the following offense: SPEEDING - Clocked by ☐ PATROL VEHICLE ☐ OTHER

(Serial # ____ Calibration / Check ____ ) at ____ MPH in a ____ zone

☐ DUI (Test Administered): ☐ BLOOD ☐ BREATH ☒ URINE ☐ OTHER)   DUI Test Results ____

TEST ADMINISTERED BY (if Applicable) ____

OFFENSE (Other than above) **DISORDERLY CONDUCT**

in Violation of Code Section **06-5** of ☐ State Law ☒ Local Ordinance

REMARKS **SUB @ COMMUNITY WELLNESS CLEARING**
**IN FRONT OF THIS ZONE CAMERAS**
**REFUSED TO BE ESCORTED OUT BY DEKALB**
**CASE #09040516**

| WEATHER | ROAD (A)(B) | TRAFFIC | LIGHTING | COMMERCIAL VEHICLE INFORMATION |
|---|---|---|---|---|
| ☐ Clear | ☐ Dry ☐ Concrete | ☐ Light | ☐ Daylight | ☐ Commercial Vehicle Violation |
| ☐ Cloudy | ☐ Wet ☒ Blacktop | ☐ Medium | ☐ Darkness | |
| ☐ Raining | ☐ Ice ☐ Dirt | ☐ Heavy | ☐ Other | ☐ Hazardous Material Violation (PLACARD) |
| ☒ Other | ☐ Other ☐ Other | | | |

County of **COBB** and ____ miles of (city) **SMYRNA**

on **200 VILLAGE GREEN** at or near (secondary location) **COMMUNITY** or within (city) **SMYRNA** **SMYRNA**

OFFICER (Print) ____ Badge # ____ Div. ____

You are hereby ordered to appear in Court to answer to this charge on the **30** day of **June**

**2009** at **0900** ☒ A.M. ☐ P.M. in the **SMYRNA MUNICIPAL** Court

at **2800 KING STREET**

City **SMYRNA** , Georgia.

NOTICE: This citation shall constitute official notice to you that failure to appear in Court or your failure to appear in Court at the date and time stated on this citation to dispose of the cited charges against you shall cause the designated Court to forward your driver's license number to the Department of Motor Vehicle Safety, and your driver's license shall be suspended. (Georgia Code 17-6-11 and 40-5-56) The suspension shall remain in effect until such time as there is a satisfactory disposition in this matter or the Court notifies the Department of Motor Vehicle Safety.

LICENSE DISPLAYED IN LIEU OF BAIL ☐ YES ☒ NO RELEASED TO ____ **JAIL**

SIGNATURE ACKNOWLEDGES SERVICE OF THIS SUMMONS AND RECEIPT OF COPY OF SAME.

SIGNATURE ____

## ARRESTING OFFICER'S CERTIFICATION

The undersigned has just and reasonable grounds to believe, and does believe, that the person named herein has committed the offense set forth, contrary to law.

SIGNATURE ____ (Signature of Arresting Officer) Badge # ____

AUTHORIZED AND APPROVED PURSUANT TO:
CODE 40 - 13 - 1 - D.P.S. REG. 570.19

**COURT COPY**

# **Exhibit C**

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

|  |  |
|---|---|
| STATE OF GEORGIA,<br>Plaintiff<br><br>v.<br><br>MARY EVANS KIRKENDOLL<br>Defendant | )<br>)<br>) Criminal Action File No.<br>) 10-M-2991<br>)<br>)<br>) |

## DEFENDANT'S MOTION TO DISMISS ON CONSTITUTIONAL GROUNDS AND/OR DEMURRER

Defendant Mary Kirkendoll hereby moves the Court to dismiss the charge pending against her on the grounds that: **(1)** the charge is based upon a municipal ordinance, Smyrna Local Ordinance § 66-3, that is **facially overbroad**, **void for vagueness**, and **violative of the United States and Georgia Constitutions**; and **(2)** Smyrna Ordinance § 6-33 is **unconstitutional as applied** here because it was used in a content-based manner to prohibit speech that is protected by the United States and Georgia Constitutions.[1]

## I. INTRODUCTION

> *Justice Frankfurter put it succinctly . . . when he said that '[o]ne of the prerogatives of American citizenship is the right to criticize public men and measures.' Such criticism, inevitably, will not always be reasoned or moderate; public figures as well as public officials will be subject to 'vehement, caustic, and sometimes unpleasantly sharp attacks.'*

Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 53-55 (1988) (citations omitted).

This criminal prosecution has occurred because a woman attending a town hall meeting said "This is bullshit" while walking out of the meeting. In a blatant effort to scare one of its vocal critics into permanent silence, the city arrested her under its disorderly conduct ordinance and now

---

[1] Defendants reserve the right to file renewed motions to dismiss or supplemental authorities.

prosecutes her for the very type of political speech that is at the heart of the First Amendment's protection. The state cannot sustain its burden of justifying this arrest. The arrest here arose out of alleged behavior which (a) involved protected speech and (b) took place at a town hall meeting, a public forum.  Not only is the law under which Defendant is currently being prosecuted unconstitutional on its face, but application of the law to Defendant's conduct in this case violates her constitutional rights.

## II. STATEMENT OF FACTS

Mary Kirkendoll is a longtime resident of the City of Smyrna (hereinafter "the City"). She frequently made public comments, including statements at public meetings, regarding her concerns over depressed home prices and poor quality of life within the City, which she attributed to poor decisions made by City government. On April 21, 2009, Ms. Kirkendoll attended a Town Hall meeting arranged by the City. This meeting was held so that City Council members could answer questions from Smyrna citizens.

A question and answer session was scheduled for the close of the presentation. Ms. Kirkendoll submitted a question on the note card she was given. However, once the question-and-answer session began, the Council members only selected questions that put the City in a positive light. Ms. Kirkendoll's question was bypassed because it was not of the viewpoint desired by the City.

Frustrated with the City's failure to address the tough issues, Ms. Kirkendoll decided to leave the meeting. While walking towards the exit door, Ms. Kirkendoll passed Mayor Max Bacon. She stated to Mr. Bacon, "You win tonight, Mayor." As she continued toward the exit, Ms. Kirkendoll turned to the audience and stated, "This is bullshit – they are never going to tell the truth."Ms.

–2–

Kirkendoll continued to proceed to the exit, walking past numerous rows of seats. After she had walked about fifteen feet past her chair and towards the exit, a man dressed in khakis and a plain shirt approached her from behind and forcefully grabbed her, taking her arm tightly in his hand and startling her. Ms. Kirkendoll told the man she was leaving on her own and there was no need to escort her out. The man continued to aggressively pull Ms. Kirkendoll out the door, unnecessarily holding her arms behind her with intense force, pinching her, and repeatedly stating, "Quit resisting."

Only after he had walked to the exit of the auditorium with Ms. Kirkendoll did the man reveal himself as a police officer. He handcuffed and arrested Ms. Kirkendoll and took her to jail. Ms. Kirkendoll was charged with violating Smyrna Ordinance § 66-3, which prohibits "any act of public indecency, quarrel or fight, or use obscene, vulgar or profane language within the city, or to otherwise act in a disorderly manner or behave in any way contrary to public peace or morality to the disturbance of any citizen of the city."

## III. ARGUMENT

The charge against Ms. Kirkendoll must be dismissed because it does not survive constitutional scrutiny. First, the municipal ordinance under which Ms. Kirkendoll was charged is unconstitutional on its face because it is (a) overbroad, (b) vague, and (c) violative of the United States and Georgia constitutions. Moreover, the ordinance is also unconstitutional as applied because the government used the ordinance as a means to prosecute Ms. Kirkendoll based on the content of her speech.

## A. Smyrna Municipal Ordinance § 6-33 is Unconstitutional on its Face

Smyrna Ordinance § 6-33 is overbroad, vague, and gives unbridled discretion to law enforcement, and therefore violates the First and Fourteenth Amendments to the United States Constitution and Article I, section I, paragraphs 1-3, 5, 7, and 9 of the Georgia Constitution.

### 1.    Section 6-33 is unconstitutionally overbroad.

An ordinance may be voided as overbroad "if in its reach it prohibits constitutionally protected conduct." Grayned, 408 U.S. at 114. "'[W]hen state statutes or ordinances tend to burden or infringe fundamental individual rights, the state must tailor its statute so as to accomplish its goals with a minimal interference with individual liberties.'" Bullock v. City of Dallas, 248 Ga. 164, 169 (1981) (quoting Ruff v. Marshall, 438 F. Supp. 303, 306 (M.D. Ga. 1977)). Essentially, the overbreadth doctrine is an exception to the general rule of standing, under which a litigant as to whom the statute may be constitutionally applied is permitted to challenge the statute so long as the statute could be applied in a manner that violates the free speech rights of others. See Broadrick v. Oklahoma, 413 U.S. 601, 610-12 (1973). The underlying rationale for the overbreadth doctrine is that "the very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 798 (1984). Facial challenge of a statute as overbroad is a mechanism for "prevent[ing] the statute from chilling the First Amendment rights of other parties not before the court." Secretary of State of Maryland v. Joseph H. Munson Co., 467 U.S. 947, 958 (1984).

—4—

a.   **Georgia's Constitution requires the state to regulate speech in least restrictive means possible**

Under the Georgia Constitution, a statute is "unconstitutionally overbroad if it stifles expression or conduct that it otherwise protected by the Constitution." Fielden v. Topuchton, 280 Ga. 444 (2006). In Fielden, the Georgia Supreme Court struck down an ordinance governing the disruption of public meetings because it was overbroad. The statute provided that "[a] person who recklessly or knowingly commits any act which may reasonably be expected to prevent or disrupt a lawful meeting, gathering, or procession is guilty of a misdemeanor." The Court concluded that the statute was overbroad because the statute did not require (1) knowledge or intent that the act disrupt the meeting or (2) any actual or imminent disruption. The Court explained that the statute could only pass muster if it were narrowed so as to only criminalize "those activities *intended* to prevent or disrupt a lawful meeting *and* which either *cause the untimely termination* of the lawful meeting or *substantially impair the conduct* of the lawful meeting." Id. (emphasis added); see also Lewis v. City of New Orleans, 415 U.S. 130 (1974) (ordinance making it unlawful to "curse or revile or to use obscene or opprobrious language" toward police unconstitutionally overbroad); District of Columbia v. Guery, 376 A.2d 834, 838-39 (D.C. App. 1977) (finding that an order barring disruption at meetings could only stand if narrowly interpreted to require that the "loud, threatening, or abusive language be *disruptive or nearly so*," and to require that the actions were commenced with the "specific *intent* of causing disruption.").

While federal constitutional standards are rigorous where free speech is involved, the test under the Georgia Constitution is even more exacting. The Georgia Supreme Court stated in Statesboro Publ'g Co. v. City of Sylvania, 271 Ga. 92 (1999), that "[o]ur state constitution provides

even broader protection of speech than the first amendment." Id. at 95. In striking down a municipal ordinance that had prohibited the distribution of printed materials in yards, driveways, walkways, or porches in the City of Sylvania, the court held that, unlike the First Amendment of the federal constitution, Georgia's constitution "require[s] the government to adopt the least restrictive means for regulating content-neutral speech." Id. Hence, state constitutional law mandates that the state "narrowly draw its regulations to suppress no more speech than is necessary to achieve [its] goals," particularly where the law would inhibit "political, religious and personal speech." Id.

> b.    **Section 6-33 is overbroad because it proscribes constitutionally protected conduct**

While Smyrna Ordinance § 6-33 obviously abridges "political, religious and personal speech," it is not narrowly tailored as to pose the least restrictive regulation on speech. Indeed, the Georgia Supreme Court has not hesitated to strike laws similar to the one at issue here as facially overbroad and violative of the First Amendment. See Cunningham v. State, 260 Ga. at 833 (1991) (striking law criminalizing "profane" or "lewd" bumper stickers on motor vehicles, holding that profane and lewd speech is protected under the First Amendment and the statute was therefore an impermissible content-based restriction on speech).

This case is controlled by McKenzie v. State, 279 Ga. 265, 266 (2005), wherein the Georgia Supreme Court struck down a Georgia statute because it was unconstitutionally vague and overbroad on its face under the First Amendment. The defendant stipulated to the government's evidence and was convicted in a bench trial of violating O.C.G.A. § 46-5-21, which criminalizes telephonic communication that is "obscene, lewd, lascivious, [or] filthy." The defendant appealed his conviction, arguing that O.C.G.A. § 46-5-21 was an overbroad infringement on the right to free speech. Id. at 265. The Georgia Supreme Court unanimously reversed the conviction, finding that

–6–

the statute was an unconstitutionally overbroad content-based regulation of speech. Id. at 267-68. The Court first held that the statute was a content-based restriction on speech because it specifically targeted telephonic speech that was "obscene, lewd, lascivious, filthy, or indecent." Id. at 267. Noting that content-based restrictions on speech are "presumptively invalid and the Government bears the burden to rebut that presumption," the Court observed that "expression this is indecent but not obscene is protected by the First Amendment." Id. at 266-67.

Because the statute was content-based, the Court held that it must survive strict scrutiny, meaning the government was required to show that the statute "promote[d] a compelling state interest" and was the "least restrictive means to further the articulated interest." Id. at 267. In reviewing the statute at issue, the Court noted that "it is clear the statute lacks the precision that the First Amendment requires when a statute regulates the content of speech." Id. (internal quotations omitted). The statue was not the least restrictive means necessary to achieve the government's interest because: (1) Instead of applying only to obscene speech, it applied to speech that was merely indecent. In a footnote, the court noted its prior holding in Cunningham v. State, 260 Ga. at 833 (1991), wherein it observed that "lewd" speech is much broader than "obscene" speech. (2) Instead of making such speech illegal only when directed at minors, the statute made such speech illegal when heard by adults. (3) Instead of applying only to speech unwelcome to the listener and intended to harass, it applies to speech welcomed by the listener and spoken with intent to please or amuse. Id.

Just like the Georgia statute at issue in McKenzie, Smyrna Ordinance § 6-33 is a content-based regulation of speech that fails strict scrutiny because it is not the least restrictive means necessary to achieve the government's interest. Here, the ordinance is a content-based restriction on

speech because it only applies to speech that is "obscene, vulgar, or profane."[2]  Therefore, strict

scrutiny applies and the government must prove that the ordinance is the least restrictive means

possible to achieve its interest. See McKenzie, 279 Ga. at 266-67. Assuming but not conceding that

public order is a compelling government interest, Smyrna Ordinance § 6-33 certainly is not the least

restrictive means available to achieve that interest.

    In striking similarity to the overbreadth problems with the statute in McKenzie, Smyrna's

ordinance "lacks the precision" necessary to survive strict scrutiny because it (1) prohibits speech

that is merely vulgar or profane, and therefore protected by the First Amendment; (2) criminalizes

profane and vulgar language regardless of the listener without limiting the prohibition to situations

where children are listening or present; and (3) applies to speech welcomed by the listener and

spoken with intent to please or amuse. Indeed, Smyrna's ordinance is so sweeping that it criminalizes

numerous potential instances of everyday, lawful -- and undeniably protected -- speech.  For

example, the law appears to prohibit:

- participating vigorously in public debate on a particularly controversial matter in a manner that someone might find "disorderly;" and

- using a profane word while participating in a heated political debate with other individuals, even if the debate was in a private home within city limits; and

- engaging in spirited political debate with another citizen in a manner that could be construed as a "quarrel."

In short, because § 6-33 criminalizes protected political and non-political expression, it is

---

2 It is well-settled that profanity enjoys constitutional protection under the First Amendment. The United States Supreme Court made clear in Cohen v. California that even the word "fuck" enjoyed constitutional protection so long as it was not specifically directed towards another as a "fighting word." 403 U.S. 15, 23 (1971). The majority reasoned that it is nearly impossible to differentiate offensive and accepted speech. "For, while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true that one man's vulgarity is another's lyric." Id. at 25.

unconstitutionally overbroad. Thus, Smyrna Ordinance § 6-33 is violative of the First Amendment, and must be stricken.

### 2. Section 6-33 is unduly vague.

The Due Process Clause of the Fourteenth Amendment forbids the state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const., amend. 14; see also Ga. Const. art. 1, § 1 ("No person shall be deprived of life, liberty or property except by due process of law"). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). This is because "vague laws offend several important values," namely, providing fair warning to law-abiding citizens, avoiding arbitrary and discriminatory enforcement of the law, and not chilling free speech. Id. at 108-09. Due process "requires that an individual be informed as to what actions a governmental authority prohibits with such clarity that he is not forced to speculate at the meaning of the law." Armstrong v. Mayor & Aldermen of Savannah, 250 Ga. 121, 123 (1982).

To withstand a vagueness challenge, a law, by its terms, must give a person of ordinary intelligence sufficiently precise warning as to the proscribed conduct and provide "explicit standards" to those who enforce the law. Grayned, 408 U.S. at 108; see Rose v. Locke, 423 U.S. 48, 49-50 (1975); Satterfield v. State, 260 Ga. 427, 428 (1990). If it does not, an individual cannot be held criminally responsible for the conduct that he or she could not have fairly understood to have been illegal. See Rose, 423 U.S. at 49. A greater degree of specificity is required of criminal laws because the potential loss of liberty is involved. See Satterfield, 260 Ga. at 427-28.

Section 6-33 prohibits any conduct or speech that is "disorderly" or that is "contrary to public peace or morality to the disturbance of any citizen of the city." But Ms. Kirkendoll could not

−9−

reasonably have understood what the statute criminalized and thus could not have conformed her behavior to the law accordingly. Indeed, it cannot be said that the statute puts any person of ordinary intelligence on notice of the particular conduct that is forbidden. The law has at least two defects in this regard.

First, it gives no definition whatsoever of the term "disturbance." What creates a "disturbance," and hence, violative of § 6-33, is therefore wholly subjective. Conduct or speech that is a "disturbance" to some citizens may not be a "disturbance" to others. See, e.g., Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971) (striking down anti-loitering ordinance that outlawed assembling "in a manner annoying to persons passing by" on vagueness grounds because "[c]onduct that annoys some people does not annoy others"). Second, the law impermissibly turns on a citizen's determination of whether particular speech is a "disturbance." A violation of this law depends largely on the reactions of unspecified people other than the speaker, reactions that are often difficult, if not impossible, to predict. In all events, it is well-settled that "[l]isteners' reaction to speech is not a content-neutral basis for regulation." Forsyth County v. Nationalist Movement, 505 U.S. 123, 134 (1992).

These deficiencies, acting in concert, force law-abiding citizens to guess at the sensitivities and reaction of every other "citizen of the city" and encourages self-censorship. The law does not "define the criminal offense with sufficient definiteness," especially where the law does not specify which attendees' unfavorable reactions might trigger criminal prosecution. Instead, it requires law-abiding individuals to "speculate at the meaning of the law." Armstrong, 250 Ga. at 123. Such an ambiguous law may not be enforced.

      **3.**     **Section 6-33 is unconstitutional because it grants unbridled discretion to law enforcement officers.**

-10-

In addition, the vague nature of this ordinance provides police officers unfettered power to decide who is in violation of the ordinance and who is not. This sort of <u>de facto</u> law making by law enforcement officials is impermissible. See <u>Nationalist Movement</u>, 505 U.S. at 132-33. "Under our democratic system of government, lawmaking is not entrusted to the moment-to-moment opinions of a policeman on his beat. To let a policeman's command become equivalent to a criminal statute comes dangerously close to making our government one of men rather than laws." <u>Bullock</u>, 248 Ga. at 166-67.

Smyrna Ordinance § 6-33 effectively makes the meaning of the law subject to the "moment-to-moment opinions of a police officer on his beat." <u>Id.</u>; see <u>Satterfield</u>, 260 Ga. at 428 (invalidating anti-public indecency and disorderly conduct ordinance in part because it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an <u>ad hoc</u> and subjective basis"). The deficiencies in the statute allow a police officer's determination as to whether or not the law has been broken to be colored by their personal opinion as to the content of the speech.

The circumstances leading to Ms. Kirkendoll's arrest illustrate the expansive power afforded by Smyrna Ordinance § 6-33. Surely Smyrna police officers have often overhead the utterance of the word "bullshit" or other profanity within city limits. Indeed, it certainly would seem incredulous to believe that any given officer had not himself uttered the word "bullshit" within city limits at one time or another. Yet, others who say profane words are treated differently from Ms. Kirkendoll because they are not arrested or even threatened with arrest.

Enforcement of the law according to the whim of a few violates the free speech rights of the speakers. The reaction of a police officer or a public official to speech is not a valid content neutral basis for curbing speech. See <u>Nationalist Movement</u>, 505 U.S. at 134. "'Regulations which permit

-11-

the government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment.'" Id. at 135 (quoting Regan v. Time, Inc., 468 U.S. 641, 648-649 (1984)). Just as it is impermissible to make some marchers pay more for a permit because police or local officials believe their speech is unpopular, see National Movement, 505 U.S. at 134, so too the government may not arrest some speakers at a public meeting (but not others) based on the reactions of listeners or law enforcement officers. Because the statute sweeps within its ambit a wide range of protected speech, it must be struck down.

## B.   Smyrna Ordinance § 6-33 is unconstitutional as applied to Ms. Kirkendoll's political activity

Finally, the charges should be dismissed because application of Smyrna Ordinance § 6-33 to Ms. Kirkendoll's conduct violates the First Amendment. Because the alleged activity out of which these charges arose took place at a Town Hall meeting held by the City Council, plainly a public forum, the government's conduct is subject to the highest level of scrutiny under the First Amendment. Under the stringent "strict scrutiny" test, the government may place time, place, or manner restrictions on speech in a public forum only if those restrictions are content neutral, narrowly tailored to serve a significant governmental interest, and leave ample alternative channels for communication. See Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). The state's invocation of § 6-33 against Ms. Kirkendoll was not a narrowly tailored response to her legitimate political advocacy, much less the "least intrusive" manner of maintaining order; nor has the law been enforced in a content neutral fashion. Statesboro Publ'g Co., 271 Ga. at 95.

1. **The City failed to narrowly tailor its actions aimed at maintaining order at public meetings.**

Ms. Kirkendoll agrees that states and municipalities have an interest in focusing speakers and other meeting participants on the topics at hand and in preventing excessive disruption of meetings. See, e.g., Jones v. Heyman, 888 F.2d 1328, 1333 (11th Cir. 1989). Still, to survive strict scrutiny, the state's efforts to maintain order must be narrowly tailored to serve those goals. See Ward, 491 U.S. at 791 (quoting Clark, 468 U.S. at 82); see also Community for Creative Non-Violence v. Turner, 893 F.2d 1387, 1392 (D.C. Cir. 1990). Moreover, under the Georgia Constitution, government officials must employ the "least intrusive" means of effecting its objectives.

Here, the Smyrna City Council went well beyond what was reasonable to keep the meeting on topic and in order. The Council members could have allowed Ms. Kirkendoll to briefly address the audience and the elected officials. A council member could have warned her that her speech was disruptive. The Smyrna police could have let Ms. Kirkendoll leave the meeting room on her own accord, as she was in the process of so doing, without having her arrested. All of these alternatives presented less restrictive measures. None were pursued. Indeed, a review of the facts will reveal no "imminent spectator violence or disorder" that could not have been handled by "usual crowd control techniques." Sabel v. White, 250 Ga. 640, 642 (1983).

The hasty decision to have Ms. Kirkendoll immediately arrested and forcibly removed was not a reasonable response to her legitimate exercise of political expression, and was hardly "the least restrictive means" for restoring order at the meeting. Just as a school has several remedies for dealing with student protesters short of resorting to criminal prosecution and should resort to them first, here the Commission had other methods at its disposal for maintaining order during the meeting, but did not pursue them. See Washington v. State, 126 Ga. App. 180, 181-82 (1972) (application of law to facts troubling given availability of other less drastic discipline options). Under the circumstances, the state's complete failure to attempt to utilize more reasonable measures to restore order at the Town hall meeting violates Ms. Kirkendoll's First Amendment rights.

2.    The City unconstitutionally suppressed Ms. Kirkendoll's political speech because of the content of her message.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." Rosenberger v. Rector and Visitors of the Univ. of Virginia, 515 U.S. 819, 828 (1995) (citations omitted); see also R.A.V. v. St. Paul, 505 U.S. 377, 382 (1992). As Justice Scalia explained,

> Displays containing some words — odious racial epithets, for example — would be prohibited to proponents of all views. But 'fighting words' that do not themselves invoke race, color, creed, religion, or gender . . . would seemingly be usable ad libitum in the placards of those arguing in favor of . . . tolerance and equality, but could not be used by those speakers' opponents . . . . [The city] has no such authority to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensbery Rules.

Id. at 391-92 (emphasis added). The government may not open up a meeting to the public and then prevent individuals from speaking simply because it does not wish to hear what those individuals have to say. See Pesek v. City of Brunswick, 794 F. Supp. 768, 784 (N.D. Ohio 1992) (city council

could not prevent citizens from raising issues concerning employment by public employees); see also Hickory Fire Fighters Ass'n, Local 2653 v. City of Hickory, 656 F.2d 917, 922 (4th Cir. 1981) ("municipality cannot 'open a meeting to the public and then prohibit the . . . speech [of attendees] simply because of what [that group represents] or what its representatives wish to say.'"); cf. Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 730 (C.D. Cal. 1996) ("It is difficult to imagine a more content-based prohibition on speech than this policy, which allows expression of two points of view (laudatory and neutral) while prohibiting a different point of view (negatively critical) on a particular subject matter.").

Unfortunately, the City of Smyrna treated Ms. Kirkendoll differently based on her view on a matter of public importance.[3] First, the City Council read the questions of other audience members who expressed favorable viewpoints of the city, but the Council refused to read her question aloud because it raised tough questions the City did not want to answer. Then, the City arrested her for expressing her frustration that the City refused to allow public criticism. When, as here, the government's actions were so clearly based upon the content of a defendants' speech, the resulting prosecution cannot stand.

**CONCLUSION**

Smyrna Ordinance § 6-33 is unconstitutional on its face and as applied to Defendant. For all of the foregoing reasons, the Court should dismiss the charges against Defendant.

Respectfully submitted this 14th day of June, 2010.

---

[3]Note, however, that whether or not (and if so, to what extent) the City of Smyrna was actually hostile to Ms. Kirkendoll's point of view is irrelevant. The key is that it took action to silence her in part because of her message. See, e.g., Good News/Good Sports Club v. School Dist. of Ladue, 28 F.3d 1501, 1507 (8th Cir. 1994) (no proof of government opposition or hostility to viewpoint necessary to prove viewpoint discrimination).

Cynthia L. Counts, Esq.
Georgia Bar No. 190280
Amanda G. Hyland, Esq.
Georgia Bar No. 325115
Attorneys for Defendants
1201 Peachtree Street NE
400 Colony Square, Suite 2020
Atlanta, GA 30361
(404) 685-8271


/s/ Gerry Weber (with express permission)
Gerry Weber, Esq.
Georgia Bar No. 744878
Attorney for Defendant
Law Office of Gerald Weber
PO Box 5391
Atlanta GA 31107
(404) 522-0507

# IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

STATE OF GEORGIA,           )
     Plaintiff              )
                              ) Criminal Action File No.
v.                         ) 10-M-2991
                              )
MARY EVANS KIRKENDOLL    )
     Defendant           )

## CERTIFICATE OF SERVICE

This is to certify that I have served this day a copy of the foregoing DEFENDANTS' MOTION TO DISMISS ON CONSTITUTIONAL GROUNDS AND/OR DEMURRER by depositing a copy of the same in the United States Mail with adequate postage affixed to ensure delivery to the address as follows:

> Thomas J. Campbell, Assistant Solicitor General
> Cobb County Solicitors Office
> 12 East Park Square, Suite 101-B
> Marietta, GA 30090-9368

Respectfully submitted this 14th day of June, 2010.

Cynthia L. Counts, Esq.
Georgia Bar No. 190280
Amanda G. Hyland, Esq.
Georgia Bar No. 325115
Attorneys for Defendants

COUNTS & ASSOCIATES
1201 Peachtree Street NE
400 Colony Square, Suite 2020
Atlanta, Georgia 30361
Telephone: (404)685-8271
Facsimile: (404)521-4013
Email: ccounts@lawcounts.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARY KIRKENDOLL,                          )
                                          )
Plaintiff                                 )
                                          )
v.                                        )
                                          )
CITY OF SMYRNA,                           )          CIVIL ACTION FILE
MAX BACON, Mayor,                         )          NO. 1:11-cv-01306-CAP
RANDY BLACK, and                          )
OFFICERS WILLIAMS,                        )
OWENS, THACKER,                           )
HUTTO, MILLSAPS, and                      )
BRANYON, Officers of the City of          )
Smyrna Police Department,                 )
                                          )
Defendants.                               )

## VERIFICATION

I, Mary Kirkendoll, personally appeared before the undersigned notary public, and

say under oath that I am the Plaintiff in the above-styled action and that the facts stated in the

Complaint are true and correct to the best of my knowledge and belief.

DATED this 25th day of July, 2011.

_____
Mary Kirkendoll

SWORN to and SUBSCRIBED
Before me this 25 day of
JULY, 2011.

_____
Notary Public

My Commission Expires:

DANIEL PETERSON
Notary Public
Cobb County
State of Georgia
My Commission Expires Sep 25, 2011

7045214013

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARY KIRKENDOLL, )<br><br>Plaintiff )<br><br>v. )<br><br>CITY OF SMYRNA, )<br>MAX BACON, Mayor, )<br>RANDY BLACK, and )<br>OFFICERS WILLIAMS, )<br>OWENS, THACKER, )<br>HUTTO, MILLSAPS, and )<br>BRANYON, Officers of the City of )<br>Smyrna Police Department, )<br><br>Defendants. ) | CIVIL ACTION FILE<br>NO. 1:11-cv-01306-CAP |

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Mary Kirkendoll, hereby swear and ver[i]

under penalty of perjury under the laws of the United States of America that th[e]

foregoing facts stated in the Amended Complaint are true and correct to the be[st] of

my knowledge and belief.

DATED this 25th day of July, 2011.

_____
Mary Kirkendoll

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARY KIRKENDOLL,                         )
                                          )
Plaintiff                                 )
                                          )
v.                                        )
                                          )
CITY OF SMYRNA,                           )        CIVIL ACTION FILE
MAX BACON, Mayor,                         )        NO. 1:11-cv-01306-CAP
RANDY BLACK, and                          )
OFFICERS WILLIAMS,                        )
OWENS, THACKER,                           )
HUTTO, MILLSAPS, and                      )
BRANYON, Officers of the City of          )
Smyrna Police Department,                 )
                                          )
Defendants.                               )

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed this **VERIFIED**

**AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system

which will automatically send email notification of such filing to the following

counsel of record:

Harvey S Gray
Matthew A. Ericksen
Gray, Rust, St. Amand, Moffett & Brieske, LLP
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, GA 30326

36

Respectfully submitted this 25th day of July, 2011.

s/ Cynthia L. Counts
Cynthia L. Counts
Georgia Bar No. 190280

Counts Law Group
400 Colony Square, Suite 2020
1201 Peachtree Street NE
Atlanta, Georgia  30361
Phone:  (404) 550-6233
Fax:      (404) 521-4013
email:  ccounts@lawcounts.com

37