IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARY KIRKENDOLL, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SMYRNA, | ) | CIVIL ACTION FILE |
| MAX BACON, Mayor, | ) | NO. 1:11-cv-01306-CAP |
| RANDY BLACK, and | ) | |
| OFFICERS WILLIAMS, | ) | |
| OWENS, THACKER, | ) | |
| HUTTO, MILLSAPS, and | ) | |
| BRANYON, Officers of the City of | ) | |
| Smyrna Police Department, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED VERIFIED COMPLAINT

Plaintiff Mary Kirkendoll (hereinafter "Ms. Kirkendoll") hereby brings this Second Amended Verified Complaint seeking damages and declaratory and injunctive relief for the violations of her First and Fourth Amendment rights under the United States Constitution and corollary rights under the Georgia Constitution, and for her false imprisonment, false arrest, and harassment by Smyrna Police during and after her lawful political comments during a Smyrna Town Hall meeting.

## JURISDICTION AND VENUE

### 1.

This action arises under the authority vested in this Court by virtue of 42 U.S.C. § 1983, 42 U.S.C. § 1985, 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367 (pendent jurisdiction).  Venue is proper in this Court.

## PARTIES AND SERVICE

### 2.

Plaintiff, Mary Kirkendoll, is a resident of the City of Smyrna, Georgia, who was unlawfully arrested for speaking at a Smyrna Town Hall meeting.

### 3.

Defendant City of Smyrna is a city chartered under the laws of the State of Georgia, and is subject to the jurisdiction and venue of this Court.  Defendant City of Smyrna waived service of the Summons and Verified Complaint on April 26, 2011.

### 4.

Defendant Max Bacon was at all times herein mentioned the Mayor of the City of Smyrna. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein.  He is being sued herein in his individual and in his official capacity.  Defendant Max Bacon waived service of the Summons and Verified

Complaint on April 26, 2011.

5.

Defendant Randy Black was at all times herein mentioned a police officer of the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. Defendant Black waived service of the Summons and Verified Complaint on April 26, 2011.

6.

Defendant Officer Williams was at all times herein mentioned a police officer of the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity. Defendant Williams waived service of the Summons and Verified Complaint on April 26, 2011.

7.

Defendant Officer Owens was at all times herein mentioned a police officer of the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity. Defendant Owens waived service of the Summons and Verified Complaint on April 26, 2011.

8.

Defendant Officer Thacker was at all times herein mentioned a police officer of the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity. Defendant Thacker waived service of the Summons and Verified Complaint on April 26, 2011.

9.

Defendant Officer Hutto was at all times herein mentioned a police officer of the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity. Defendant Hutto waived service of the Summons and Verified Complaint on May 27, 2011.

10.

Defendant Officer Millsaps was at all times herein mentioned a police officer of the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity. Defendant Millsaps waived service of the Summons and Verified Complaint on April 26, 2011.

11.

Defendant Officer Branyon was at all times herein mentioned a police officer of the City of Smyrna Police Department. In that capacity he was acting under color of state law during the relevant acts and omissions alleged herein. He is being sued herein in his individual capacity. Defendant Branyon waived service of the Summons and Verified Complaint on April 26, 2011. All Defendants have waived service of the Summons and Verified Complaint. Defendants Randy Black and Officers Williams, Owens, Thacker, Hutto, Millsaps, and Branyon are hereinafter collectively referred to as the "Defendant Officers."

## FACTUAL ALLEGATIONS

12.

Ms. Kirkendoll is a petite woman who is a longtime resident of Defendant City of Smyrna (hereinafter "City").

13.

Ms. Kirkendoll is also a political activist who – to the disdain of Defendant Mayor Max Bacon and Defendant City of Smyrna's officials, agents, employees, attorneys, and law enforcement – has fervently sought to expose what she perceives to be their possible incompetence or corruption, as well as their general

5

failure to address or adequately remedy important social issues.

14.

Although Ms. Kirkendoll criticizes numerous individuals and government agencies, she has specifically criticized Defendant Mayor Max Bacon, Smyrna City Council Members, and Smyrna City Police.

15.

More specifically, Ms. Kirkendoll has accused Defendant Max Bacon – the Mayor of Defendant City of Smyrna – of intentionally ignoring immigration laws and criminal activity by allowing methamphetamine labs to flourish and by tolerating the hiring of illegal aliens for Defendant City of Smyrna's construction projects.  Ms. Kirkendoll insists that Defendant Max Bacon – through his incompetent leadership and desire for cheap labor – is primarily responsible for Defendant City of Smyrna's influx of illegal immigrants, depressed home prices, and generally poor quality of life.

16.

Defendant Max Bacon was aware of Ms. Kirkendoll's criticisms and was upset, angered, and humiliated by them.

17.

Ms. Kirkendoll has also specifically criticized the failure of Defendant City

6

of Smyrna's law enforcement to adequately enforce drug and immigration laws and has accused them of turning a blind eye to violations of immigration laws by ignoring the use of illegal immigrants on Defendant City of Smyrna's projects.

18.

Upon information and belief, Defendants Williams, Black, Hutto, Owens, Branyon, Thacker, and Millsaps – who were all employees of Defendant City of Smyrna's law enforcement – were aware of Ms. Kirkendoll's criticisms and were upset, angered, and humiliated by them.

19.

Ms. Kirkendoll has also advocated for the adoption of the Federal 287(g) program within Defendant City of Smyrna, which would provide Defendant City of Smyrna law enforcement with training on and assistance with the enforcement of immigration laws.  Although Cobb and Gwinnett Counties have succeeded in effectuating such a program (which Ms. Kirkendoll played a role in having enacted), her public suggestion to adopt the program in Defendant City of Smyrna has received nothing but resistance from Defendant City of Smyrna officials and law enforcement.

20.

Ms. Kirkendoll publicly commented on these issues and criticized Defendant

Max Bacon and Defendant City of Smyrna's officials and law enforcement by writing letters to local newspapers and government officials, posting on internet message boards, and giving presentations to Defendant City of Smyrna's City Council.  Ms. Kirkendoll has also submitted numerous open records requests and then publicly commented on her findings during Smyrna City Council meetings and by writing letters published in the Marietta Daily Journal.

21.

Many citizens have applauded Ms. Kirkendoll's activism and political views in various internet postings and newspaper articles.  However, Defendant Max Bacon and Defendant City of Smyrna's City Council, employees, and law enforcement do not appreciate Ms. Kirkendoll's viewpoints or unique style. Defendants Max Bacon and Defendant City of Smyrna's City Council, employees, and law enforcement insist that she has misinformed the public about the facts. They also have publicly insisted that Ms. Kirkendoll's views are foolish and racist. In short, it is no secret that Ms. Kirkendoll and her political views are unpopular with Defendant Max Bacon and Defendant City of Smyrna's City Council and law enforcement.

22.

Upon information and belief, Defendant City of Smyrna, by and though Max

Bacon and other City employees, has attacked Ms. Kirkendoll and her political views on internet postings by making negative statements about her.

23.

Defendant Mayor Max Bacon has retaliated against Ms. Kirkendoll's criticisms and political activities by publicly chastising her. At one council meeting, Defendant Max Bacon called Ms. Kirkendoll "vile" and stated that he "wish[ed] she would move" away from Defendant City of Smyrna.

24.

Smyrna Jail Manager Defendant Black has also chastised Ms. Kirkendoll when she went to the jail to retrieve public records.  Defendant Black loudly called Ms. Kirkendoll a "racist," "bigot," and "troublemaker" within earshot of several jail employees.

25.

On March 1, 2009 Ms. Kirkendoll gave a presentation to the Smyrna City Council regarding her concerns that Defendant Max Bacon and Defendant City of Smyrna's law enforcement had permitted large numbers of undocumented workers and illegal aliens to live and work in Defendant City of Smyrna, which can be viewed at: http://www.youtube.com/watch?v=10QW0xxm9YU.

26.

At the end of the presentation, Ms. Kirkendoll unrolled a small hand-held Mexican flag and stated "[t]onight, Mayor Bacon, I want to present you with the flag from Mexico."  Defendant Max Bacon immediately interrupted Ms. Kirkendoll and sought to terminate her presentation by stating "[t]hank you for your comment.  Next speaker please.  You're out of order."



27.

Ms. Kirkendoll continued her presentation and stated, "I want to ask you – which flag do you want to fly over your City Hall?  I hope you make the right choice."  Defendant Max Bacon kept repeatedly asking for the "next speaker."  Ms. Kirkendoll then walked up to Defendant Max Bacon's bench to give him the Mexican flag.  Defendant Max Bacon backed away from her and exclaimed with obvious disgust "I don't want to touch it.  Get that away from me" as she gently

10

laid the Mexican flag on the podium.



28.

A video of the presentation was publicly posted by a third party on YouTube on March 7, 2009 (hereinafter "the Video").  The Video was viewed by a large number of citizens both in Smyrna and around the country.  Defendant Max Bacon was particularly angry when Ms. Kirkendoll's presentation was posted on the world wide web and then elevated to a wider audience than had ever been present at any of the Smyrna Town Hall meetings.

29.

Upon information and belief, Defendants Max Bacon, Williams, Black, Owens, Hutto, Branyon, Thacker, and Millsaps were aware of this video and its critical portrayal of Defendant Max Bacon and Defendant City of Smyrna's City

Council and law enforcement, and believed it was political propaganda intended to

humiliate Defendant City of Smyrna's officials, agents, employees, and law

enforcement.

30.

Specific screens offensive to Defendants Max Bacon, Williams, Black,

Hutto, Owens, Branyon, Thacker, Millsaps, and other agents and employees of

Defendant City of Smyrna are set forth below:







31.

The Video has been viewed approximately 773 times (as of the date of this

filing) and is the second search result that comes up for an internet search using the

terms "Max Bacon Smyrna."

32.

The Video received several positive comments lauding Ms. Kirkendoll's political drive.  For example, two comments state "I support this lady 100%" and "if our elected officials acted with as much integrity as she does we would not have the problem in the first place."

33.

Upon information and belief, Defendant Max Bacon and other officials and employees of Defendant City of Smyrna were offended by and frustrated with Ms. Kirkendoll's public criticisms and the popularity of the Video, and accordingly regarded her with hostility and extreme dislike.

34.

Upon information and belief, Defendant City of Smyrna – by and through Defendant Mayor Max Bacon, Director of Communications Jennifer Bennett, and other Defendant City of Smyrna employees and agents – were planning a highly publicized town hall meeting scheduled to take place on April 21, 2009, which was approximately one month after the Video was first posted.  Upon information and belief, Defendant Max Bacon, Director of Communications Jennifer Bennett, and other Defendant City of Smyrna employees and agents agreed that they did not want

to allow Ms. Kirkendoll any opportunity to embarrass them or otherwise use this meeting as a platform for her political views.

35.

To make sure Ms. Kirkendoll would not have any opportunity to embarrass them or otherwise use the meeting as a platform for her political views, Defendant City of Smyrna (by and through its agents), Defendant Max Bacon, Director of Communications Jennifer Bennett, and other Defendant City of Smyrna employees and agents – upon information and belief – conspired to make sure Ms. Kirkendoll did not have any opportunity to express her political views.

36.

Accordingly, upon information and belief, Defendant City of Smyrna – by and through its agents Defendant Max Bacon and Jennifer Bennett – directed at least eight uniformed police officers, two park rangers, and undercover police officers to be on duty during the Smyrna Town Hall meeting and keep a watchful eye on Ms. Kirkendoll during the meeting.

37.

Upon information and belief, Defendant City of Smyrna – by and through Defendant Max Bacon and Jennifer Bennett, conspired with Defendants Williams, Owens, Hutto, Branyon, Thacker, and Millsaps to watch Ms. Kirkendoll closely and

immediately arrest her if she did anything that was arguably in violation of Smyrna Local Ordinance § 66-33.

38.

Smyrna Local Ordinance § 66-3 makes it illegal to "quarrel or fight, or use obscene, vulgar or profane language within the city, or to otherwise act in a disorderly manner or behave in any way contrary to public peace or morality to the disturbance of any citizen of the city."

39.

Upon information and belief, Defendant City of Smyrna – by and through Defendant Max Bacon – instructed Jennifer Bennett to supervise Ms. Kirkendoll and ensure she did not speak to reporters or speak to other attendees.

40.

Smyrna City Council has historically had a public comment section during Council meetings for citizen input on issues affecting Defendant City of Smyrna. However, Ms. Kirkendoll and other citizens objected that Smyrna City Council was never given a time to respond to citizens' questions during Council meetings.

41.

Due to public demand for a question/answer session with Smyrna City Council members, Defendant City of Smyrna – by and through its agents – decided to have a

question/answer session at the Smyrna Town Hall meeting during the "close of the presentation."   Attendees were to "submit written questions which [would] be addressed immediately following intermission."

42.

The question/answer session at the Smyrna Town Hall meeting constitutes a "public forum" within the meanings of the United States and Georgia Constitutions.

43.

On April 21, 2009, Ms. Kirkendoll rode to the Smyrna Town Hall meeting with her friend, Jill Benson.

44.

When Ms. Kirkendoll arrived at the Smyrna Town Hall meeting at about 6:15 PM, she signed an attendance sheet.  Ms. Kirkendoll and Ms. Benson then staged a peaceful protest outside the Smyrna Community Center on the public sidewalk. They held signs that stated their concerns regarding the Defendant City of Smyrna government.

45.

At about 6:45 PM, Ms. Kirkendoll and Ms. Benson went back inside the Smyrna Community Center.  Ms. Kirkendoll and Ms. Benson left their signs outside as they were directed to do.

46.

Ms. Kirkendoll was given a note card on which to write her questions for the Smyrna City Council members.  Ms. Kirkendoll was informed that the note cards would be collected and selected questions would be read aloud.

47.

Before the Smyrna Town Hall meeting began, and while numerous other Smyrna Town Hall meeting-goers were standing about the room and engaged in conversation, Ms. Kirkendoll went to speak with Marc Picard of WXIA 11 News, the moderator for the Smyrna Town Hall meeting, who was sitting down and looking through some papers.

48.

While Ms. Kirkendoll was speaking to Mr. Picard, Jennifer Bennett, acting on the aforementioned directions from Defendant Max Bacon, instructed Ms. Kirkendoll to sit down immediately.

49.

Ms. Kirkendoll replied that "the meeting hasn't started.  I can talk to Marc."

50.

Ms. Bennett tersely ordered Ms. Kirkendoll to sit down a second time and threatened to have Ms. Kirkendoll escorted out of the Smyrna Town Hall meeting if

she did not comply.

51.

Upon information and belief, Ms. Bennett did not instruct any of the other Smyrna Town Hall meeting-goers to sit down or to stop speaking.

52.

Ms. Kirkendoll promptly sat down in the second row of the auditorium where the Smyrna Town Hall meeting was being held. The Smyrna Town Hall meeting began with a 45-minute public relations presentation about Defendant City of Smyrna. Following intermission, the Smyrna Town Hall meeting reconvened with the scheduled question-and-answer session. Questions submitted by attendees were read from the note cards.

53.

Ms. Kirkendoll believed that the Smyrna City Council had carefully selected only questions that would elicit favorable answers.

54.

Frustrated with what she perceived to be the failure of Smyrna City Council to address the tough issues, Ms. Kirkendoll and Ms. Benson decided to leave the Smyrna Town Hall meeting.

55.

Ms. Kirkendoll and Ms. Benson walked quietly to the back of the auditorium where the Smyrna Town Hall meeting was being held towards the exit.

56.

While walking towards the exit door, Ms. Kirkendoll passed Defendant Max Bacon.  She initially stated, "You win tonight, Mayor."

57.

As she continued toward the exit, Ms. Kirkendoll turned to the audience and stated, "This is bullshit – they are never going to tell the truth."

58.

Her choice of the word "bullshit" was more emotive than cognitive in that it was meant be a means of informing the public of the depth of her feelings against Defendant City of Smyrna's officials, agents, and employees.  Cohen v. California, 403 U.S. 15, 16 (1971).

59.

Ms. Kirkendoll did not speak loudly enough to be recorded on a videotape of the Smyrna Town Hall meeting, a copy of which was included in the Solicitor's file, and – upon information and belief – there was absolutely no interruption of the meeting.

60.

Upon information and belief, no citizen objected to or became violently aroused by Ms. Kirkendoll's political expression and isolated use of profanity.

61.

Ms. Kirkendoll never intended to disrupt the Smyrna Town Hall meeting.

62.

Ms. Kirkendoll continued to proceed to the exit of the auditorium where the Smyrna Town Hall meeting was being held, walking past numerous rows of seats. After she had walked about fifteen feet past her chair and towards the aforementioned exit, a man dressed in khakis and a plain shirt, later identified as Defendant Williams, approached her from behind and grabbed her arm to effectuate an arrest.

63.

Defendant Williams aggressively pulled Ms. Kirkendoll out of the auditorium by her arm, stating "You're coming with me."  Defendant Williams squeezed Ms. Kirkendoll's arm so tightly that he bruised her arm.

64.

Ms. Kirkendoll told Defendant Williams she was leaving on her own and there was no need to escort her out.

65.

Defendant Williams continued to pull Ms. Kirkendoll out the door and repeatedly stated, "Quit resisting."

66.

At this point, Defendant Williams identified himself as a police officer.

67.

According to the Citation and Incident/Investigation Report, the officer was Defendant Williams.  See Citation, attached and incorporated herein as Exhibit A; see also Incident/Investigation Report, attached and incorporated herein as Exhibit B.

68.

According to Defendant Williams' narrative in the Incident/Investigation Report, Defendants Owens, Hutto, and Branyon, all of whom were Defendant City of Smyrna police officers, rushed over to help Defendant Williams detain and escort Ms. Kirkendoll out of the auditorium where the Smyrna Town Hall meeting was being held.  See Exhibit B.

69.

Once outside of the auditorium where the Smyrna Town Hall meeting was being held, Ms. Kirkendoll was arrested and placed in handcuffs by Defendants Williams, Hutto, Owens, and Branyon, acting jointly.  Defendant Williams issued her

a citation for violating Smyrna Local Ordinance § 66-3, stating "subject at community meeting cursing in front of women/children, refused to be escorted out of building." See Exhibit A.

70.

Ms. Kirkendoll was placed in the back of a police car by Defendants Williams, Hutto, Owens, and Branyon and taken to jail. Upon information and belief, the police car was driven by Defendant Thacker.

71.

Ms. Kirkendoll was searched at the jail by an unknown female police officer. She was then questioned for about 30 minutes by a male officer.

72.

Ms. Kirkendoll was held in a jail cell until she was released on her own recognizance by 10:00 p.m.

73.

Ms. Kirkendoll was held illegally for over two hours.

74.

After Ms. Kirkendoll had been arrested, but before the Smyrna Town Hall meeting concluded, Marc Picard asked two questions about compliance with enforcement of immigration laws. Less than two minutes later, Defendant Max

Bacon stated "Stan [the police chief] does a good job.  Some folks are just prejudiced.  I don't care what the color of your skin is, you are welcome in Smyrna.  I'll never tolerate anyone that's prejudiced toward any other nationality."

75.

The Incident/Investigation Report lists Defendant Williams as the reporting officer and Defendants Owens, Hutto, Branyon, Thacker, and Millsaps as assisting officers in the arrest.  See Exhibit B.

76.

The search and arrest of Ms. Kirkendoll was without probable cause or reasonable suspicion of criminal activity and was intended to chill her speech and serve as retaliation for her negative criticisms.

77.

Defendant Williams falsely and maliciously noted in his Incident/Investigation Report that he smelled a strong odor of alcohol on Ms. Kirkendoll at the time of her arrest.  The Incident/Investigation Report also falsely and maliciously states that Ms. Kirkendoll said "This is bullshit!" *twice* in front of members of the general public and small children.  See Exhibit B.

78.

Ms. Kirkendoll was not under the influence of alcohol at any point during the

course of the evening and was not charged with being under the influence of alcohol.

79.

Indeed, despite the Incident/Investigation Report's allegation that Ms. Kirkendoll was intoxicated at the time of the arrest, Ms. Kirkendoll's car keys were returned to her and she was allowed to drive home after she was released from jail.

80.

Upon information and belief, Defendants Williams, Owens, Hutto, Branyon, Thacker, and Millsaps had received Georgia Peace Officer Standards and Training (hereinafter referred to as "P.O.S.T.") or other training regarding probable cause and the constitutionality of laws.

81.

Defendants Williams, Owens, Hutto, Branyon, Thacker, and Millsaps had also taken an oath to uphold the law and prevent individuals from acting unlawfully.

82.

Defendants Williams, Owens, Hutto, Branyon, Thacker, and Millsaps knew or should have known that arresting Ms. Kirkendoll for stating "this is bullshit" constituted an unconstitutional violation of her right to free speech as guaranteed by the First Amendment to the United States Constitution.

83.

As a result of the outrageous and unlawful conduct by Defendants Max Bacon,

Black, Williams, Hutto, Owens, Branyon, Thacker, Millsaps, and City of Smyrna

acting by and through its agents, Ms. Kirkendoll suffered, and still continues to suffer,

emotional distress.

84.

Although Ms. Kirkendoll feels it is her duty to remain active with City of

Smyrna issues, she also feels fearful and unsafe in exercising her constitutionally

protected rights to free speech and to petition the government.

85.

Numerous citizens of the City of Smyrna have ridiculed Ms. Kirkendoll for

her arrest and the false allegation that she was intoxicated during the arrest.

86.

Defendant City of Smyrna – acting by and through its agents – induced and

caused criminal charges to be filed against Ms. Kirkendoll in retaliation for her past

public criticisms and her political expression during the April 21, 2009 Smyrna Town

Hall meeting.

87.

Ms. Kirkendoll was ordered to make her first court appearance in Municipal

Court on June 30, 2009.

88.

Ms. Kirkendoll's counsel repeatedly attempted to convince the prosecutor to dismiss the charges, explaining the obvious violation of Ms. Kirkendoll's constitutional right of free speech.

89.

Yet, despite the clear unconstitutionality of the Smyrna ordinance, the prosecutor adamantly refused to dismiss the charges and said that his only plea offer would require Ms. Kirkendoll to admit wrong-doing and take anger management classes.

90.

The prosecutor further implied that his hands were tied due to political pressure from Defendant City of Smyrna by and through its agents, including Defendant Max Bacon, to pursue Ms. Kirkendoll's prosecution.

91.

Ms. Kirkendoll refused to accept the plea bargain and demanded a jury trial, which resulted in the criminal prosecution being transferred to State Court.  An accusation was drafted against Ms. Kirkendoll on May 13, 2010 and the case was assumed against her.

92.

Despite attempts by Ms. Kirkendoll's counsel to persuade the prosecutor to drop the charges due to the unconstitutionality of the underlying ordinance, arrest, and charges, Ms. Kirkendoll was required to appear in State Court for her arraignment on June 4, 2010.

93.

The prosecutor eventually agreed to review the legal arguments set forth by Ms. Kirkendoll's counsel, who prepared and filed a dispositive motion to dismiss the charges on June 14, 2010.  See Motion to Dismiss, attached as Exhibit C.

94.

The prosecutor nevertheless refused to dismiss the case and Ms. Kirkendoll was required to attend a calendar call on October 7, 2010.

95.

During the calendar call, counsel informed the Judge that a dispositive motion had been filed and that Ms. Kirkendoll wished to be heard by the Court prior to trial.  When the Judge asked for the basis of the motion, and counsel explained that Ms. Kirkendoll had been arrested for saying the word "bullshit" during a meeting in violation of her constitutional rights, the Judge responded "sounds like BS to me."  Twelve days later, ante litem notice was sent to all of the

Defendants in this case.

96.

Barry Morgan, the Solicitor General of Cobb County, was ultimately approached and was presented with the facts of the case and the legal arguments regarding the unconstitutionality of the Smyrna Ordinance.

97.

On December 15, 2010, over a year and a half after Ms. Kirkendoll's arrest, the Honorable Craig Bowers, Judge of the State Court of Cobb County, was presented with a Motion to Nolle Prosse, or dismiss, the false charges and accusations against Ms. Kirkendoll.

98.

The Honorable Craig Bowers signed an order dismissing the false charges.

**CLAIMS FOR RELIEF**

**COUNT ONE**

**VIOLATION OF THE FIRST AMENDMENT PURSUANT TO 42 U.S.C. § 1983 (Ordinance is unconstitutionally vague and overbroad on its face)**

99.

Smyrna Local Ordinance § 66-3 makes it illegal to "quarrel or fight, or use obscene, vulgar or profane language within the city, or to otherwise act in a disorderly manner or behave in any way contrary to public peace or morality to the disturbance

29

of any citizen of the city."

100.

Defendants City of Smyrna, Max Bacon, Black, Williams, Hutto, Branyon, Owens, Thacker, and Millsaps are all considered "persons" under a § 1983 claim.

101.

Defendants Max Bacon, Black, Williams, Hutto, Branyon, Owens, Thacker, and Millsaps are all clothed with the authority of state law – and thus acted under "color of law" – because they are employed by a municipality (Defendant City of Smyrna) within the State of Georgia.  See West v. Atkins, 487 U.S. 42, 49 (1988)( stating that state employment is generally sufficient to render the defendant a state actor).

102.

Defendants City of Smyrna (by and through its agents), Max Bacon, Black, Williams, Hutto, Branyon, Owens, Thacker, and Millsaps caused Ms. Kirkendoll to suffer a deprivation of her First Amendment right of free speech when they enforced an unconstitutional ordinance– Smyrna Local Ordinance 66-33- that restricts protected speech.

103.

"Vulgar" or "profane" language – which is what Smyrna Local Ordinance 66-33 criminalizes – is often essential to political speech and lies at the core of what is

protected by the First Amendment. The arrest of Mary Kirkendoll rests upon the asserted offensiveness of the words she used to convey her message the public.  See Cohen v. California, 403 U.S. 15, 18 (1971). The only conduct which Defendants City of Smyrna (by and through its agents), Max Bacon, Black, Williams, Hutto, Branyon, Owens, Thacker, and Millsaps sough to punish is the fact of communication. Id.  As is set forth more fully below in Paragraphs 59- 61 and 77-79,  which are incorporated herein as if fully set forth, Ms. Kirkendoll was arrested solely upon her speech, not upon any separately identifiable conduct which a was intended by Ms. Kirkendoll to be perceived by others as expressing or conveying any message that would be obscene or incite violence. Id.

104.

The United States Supreme Court has held that the government may not regulate speech based on its substantive content or the message it conveys. Rosenberger v. Rector and Visitors of the Univ. of Virginia, 515 U.S. 819, 828 (1995); see also R.A.V. v. St. Paul, 505 U.S. 377, 382 (1992); Forysth County v. Nationalist Movement, 505 U.S. 123, 135 (1992).   Also, the government may not exclude or discriminate against a party just because of its viewpoint.  Rosenberger, 515 U.S. 819 (1995).

105.

Smyrna Local Ordinance 66-33 regulates speech based on its substantive content by criminalizing speech within the city that is "vulgar or profane." Smyrna Local Ordinance 66-33, through its application and enforcement here, regulates speech based on the viewpoint of Ms.Kirkendoll because, upon information and belief, the ordinance is enforced against individuals whose views are unpopular.

106.

Because Smyrna Local Ordinance 66-33 imposes a restriction on the content of protected speech, it is invalid unless it passes strict scrutiny ( *i.e.,* it is justified by a compelling government interest and is narrowly drawn to serve that interest). R. A. V. v. St. Paul, 505 U. S. 377, 395 (1992). Smyrna Local Ordinance 66-33 cannot fulfill strict scrutiny because there is no compelling government interest. Accordingly, Smyrna Local Ordinance 66-33 is unconstitutional

107.

A statute is overly broad – and therefore unconstitutional – if it regulates substantially more speech than is allowed under the First Amendment. Schad v. Borough of Mount Ephraim, 452 U.S. 61.

108.

Smyrna Local Ordinance 66-33 is facially overbroad in that it criminalizes an

entire category of protected speech (profanity) when it is uttered ***anywhere*** within the city limits.  Accordingly, Smyrna Local Ordinance 66-33 is unconstitutional.

109.

A statute that restricts speech is unconstitutionally vague if a reasonable person cannot tell what speech is prohibited and what speech is permitted.   Coates v. City of Cincinnati, 402 U.S. 611.

110.

   Smyrna Local Ordinance 66-33 is vague because it does not provide clear notice as to what speech is vulgar or profane.

111.

   As set forth more fully in paragraphs 34-37 and 55-75, Ms. Kirkendoll was arrested, placed in handcuffs, and restrained in the back of a police car by Defendants Williams, Hutto, Owens, Branyon, Thacker, and Millsaps – who were acting within the scope of their employment upon the orders of Defendant City of Smyrna by and through its agent Defendant Max Bacon – for violating this unconstitutional ordinance.   Indeed, Defendant Williams issued her a citation for violating Smyrna Local Ordinance § 66-3, stating  "subject at community meeting cursing in front of women/children, refused to be escorted out of building."  See Exhibit A.

112.

Defendant Williams maliciously and falsely noted in his Incident/Investigation Report that he smelled a strong odor of alcohol on Ms. Kirkendoll at the time of her arrest.  Ms. Kirkendoll was not under the influence of alcohol at any point during the course of the evening and was not charged with being under the influence of alcohol. Consequently, using profanity within city limits was the only basis for her arrest.

113.

Upon information and belief, Defendants Williams, Owens, Hutto, Branyon, Thacker, and Millsaps had received P.O.S.T. training or other training regarding probable cause and the constitutionality of laws.  As a part of P.O.S.T. training, they would have been informed that arresting an individual for using profanity in isolation during a political forum is unconstitutional.  Thus, they reasonably knew or should have known at the time of the arrest of Ms. Kirkendoll that arresting Ms. Kirkendoll at the Smyrna Town Hall meeting pursuant to Smyrna Local Ordinance § 66-33 was unconstitutional and violated her right to free speech under the First Amendment.

114.

Defendant City of Smyrna may be held liable for the violation of Ms. Kirkendoll's First Amendment rights pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).  Monell holds that a municipality can be sued for

34

damages under 42 U.S.C. 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ***ordinance***, regulation or decision officially adopted by that body's officers."  Id. at 659 (emphasis added).

115.

Defendant City of Smyrna – by and through its agents – adopted Smyrna Local Ordinance § 66-33 as a policy.  This policy was subsequently implemented as a basis for Ms. Kirkendoll's unlawful seizure, arrest, imprisonment, and prosecution.

116.

In violating Ms. Kirkendoll's rights under the First Amendment to the United States Constitution, Defendant City of Smyrna – by and through its agents, including but not limited to: Defendants Max Bacon Williams, Hutto, Owens, Branyon, Thacker, and Millsaps – directly and proximately caused her to suffer unlawful seizure, arrest, imprisonment, anguish, embarrassment, and humiliation.

## COUNT TWO

## VIOLATION OF THE FIRST AMENDMENT PURSUANT TO

## 42 U.S.C. § 1983 (Retaliation)

117.

The allegations of paragraphs 13-30, 33-39, 57-73 are incorporated as though fully set forth herein.

118.

As further explained in Paragraphs 13-30, Ms. Kirkendoll has often publicly criticized Defendant City of Smyrna, Defendant Max Bacon, City officials, City employees, and City law enforcement, including Defendants Williams, Hutto, Owens, Branyon, Black, Thacker, and Millsaps, which constituted political speech that is protected by the First Amendment.  See Stavropoulos v. Firestone, 361 F.3d 610 (11th Cir. 2004).

119.

In particular, she has written letters to local newspapers, made postings on internet message boards, and given speeches during Smyrna City Council meetings that accused Defendants City of Smyrna, Max Bacon, Williams, Hutto, Owens, Branyon, Black, Thacker, and Millsaps of ignoring immigration and drug laws and further accused them of possible incompetence and corruption.

120.

Ms. Kirkendoll engaged in constitutionally protected speech.  As a direct result of engaging in such constitutionally protected speech, she suffered an "adverse action," as is set forth more fully below in the next two paragraphs.  Id.

121.

Upon information and belief, Defendant Max Bacon retaliated against Ms. Kirkendoll by conspiring to and directing Defendant City of Smyrna officials and agents (including Jennifer Bennett, who ordered Ms. Kirkendoll to sit down when she went to talk to a reporter) to silence Ms. Kirkendoll during the Smyrna Town Hall meeting.  Upon information and belief, Defendant Max Bacon retaliated and conspired against Ms. Kirkendoll because he was angered, upset, and offended by her political speech and thus wanted to target and silence her political message. This conspiracy and suppression of Ms. Kirkendoll's constitutional rights constitutes an "adverse action."

122.

Upon information and belief, Defendants Williams, Black, Hutto, Owens, Branyon, Thacker, and Millsaps, retaliated against Ms. Kirkendoll by conspiring to and subsequently arresting, seizing, and unlawfully imprisoning.  Defendants Williams, Black, Hutto, Owens, Branyon, Thacker, and Millsaps her because they was angered, upset, and offended by her political speech and thus wanted to target and silence her political message.  This conspiracy, unlawful seizure, unlawful arrest, and unlawful imprisonment constitutes an "adverse action."

123.

Defendant City of Smyrna can be held liable under Pembauer v. City of Cincinnati, 475 U.S. 469 (1986), which holds that a municipality can be held liable for the acts of its agents when those agents acted pursuant to a directive of the municipality's final decision-maker who is responsible for establishing final governmental policy respecting such acts. The municipality can also be held liable for the acts of its agents when the power to establish final policy is delegated to its agents. Id.

124.

Upon information and belief, Defendant Max Bacon, as the Mayor of Defendant City of Smyrna, was the final decision-maker with the power to establish Defendant City of Smyrna's final policy for enforcing Smyrna Local Ordinance § 66-33. Upon information and belief, Defendant Max Bacon directed Defendant City of Smyrna law enforcement (including Defendants Williams, Hutto Owens, Branyon, Thacker, ad Millsaps) to silence Ms. Kirkendoll by arresting her under Smyrna Local Ordinance 66-33.

125.

Alternatively, upon information and belief, Defendants Max Bacon, Williams, Owens, Hutto, Branyon, Thacker, or Millsaps were delegated the power to establish Defendant City of Smyrna's final policy for enforcing Smyrna Local

Ordinance § 66-33.

126.

Consequently, Defendant City of Smyrna can be held liable for the

retaliatory acts of Defendants Max Bacon, Williams, Owens, Hutto, Branyon,

Thacker, Millsaps in enforcing Smyrna Local Ordinance § 66-33 under Pembauer

v. City of Cincinnati, 475 U.S. 469 (1986).

127.

Defendants Max Bacon, Black, Williams, Owens, Hutto, Branyon, Thacker,

Millsaps, and City of Smyrna – by and through its agents – thereby retaliated

against Ms. Kirkendoll in violation of her rights under the First Amendment.

128.

Defendants Max Bacon, Black, Williams, Owens, Hutto, Branyon, Thacker,

Millsaps, and City of Smyrna – by and through its agents – knew or should have

known that Smyrna Ordinance Local Ordinance § 66-33 could not serve as a

lawful basis for Ms. Kirkendoll's seizure, arrest, imprisonment, or violation of her

constitutional rights, especially since Ms. Kirkendoll's political speech neither

disrupted nor intended to disrupt the meeting and was merely intended to convey

the depth of her feelings against Defendant Max Bacon and the format of the

meeting.

129.

Although Defendant Williams falsely and maliciously noted in his Incident/Investigation Report that he smelled a strong odor of alcohol on Ms. Kirkendoll at the time of her arrest, Ms. Kirkendoll was not under the influence of alcohol at <u>any</u> point during the course of the evening and was not charged with being under the influence of alcohol. Consequently, Defendant Williams' false accusation that Ms. Kirkendoll was under the influence of alcohol could not have served as a valid basis for seizing, arresting, or imprisoning her.

130.

In violating Ms. Kirkendoll's rights under the First Amendment by retaliating against her, Defendants Max Bacon, Black, Williams, Owens, Hutto, Branyon, Thacker, Millsaps, and City of Smyrna – by and through its agents – directly and proximately caused her to suffer unlawful seizure, arrest, imprisonment, prosecution, anguish, embarrassment and humiliation.

## COUNT THREE

## VIOLATION OF THE FOURTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983

131.

The allegations of paragraphs 57-79 are incorporated as though fully set forth herein.

40

132.

Defendants City of Smyrna, Max Bacon, Williams, Hutto, Branyon, Owens, Thacker, and Millsaps are all considered "persons" under a § 1983 claim.

133.

Defendants Max Bacon, Williams, Hutto, Branyon, Owens, Thacker, and Millsaps are all clothed with the authority of state law – and thus acted under "color of law" – because they are employed by a municipality (Defendant City of Smyrna) within the State of Georgia.  See West v. Atkins, 487 U.S. 42, 49 (1988)( stating that state employment is generally sufficient to render the defendant a state actor).

134.

As set forth more fully in Paragraphs 56-75, Ms. Kirkendoll was forcefully removed from the auditorium and arrested for saying "this is bullshit."  In saying "this is bullshit," Ms. Kirkendoll did not intend to disrupt the meeting, did not threaten or engage in any violent behavior, and did not pose a threat to any of the meeting-goers.

135.

Defendant Williams intentionally and unreasonably seized Ms. Kirkendoll – and thereby violated her Fourth Amendment rights –by grabbing her arm to pull her out of the Smyrna Town Hall meeting and arresting her pursuant to an unconstitutional ordinance.

136.

Defendants Owens, Hutto, and Branyon intentionally and unreasonably seized Ms. Kirkendoll – and thereby violated her Fourth Amendment rights – by helping Defendant Williams physically escort her out of the auditorium where the Smyrna Town Hall meeting was being held and helping Defendant Williams arrest her pursuant to an unconstitutional ordinance.

137.

Defendant Thacker intentionally and unreasonably seized Ms. Kirkendoll – and thereby violated her Fourth Amendment rights – by acting as an assisting officer during the April 21, 2009 incident and transporting Ms. Kirkendoll to the Smyrna Jail.

138.

Upon information and belief, Defendant Millsaps intentionally and unreasonably seized Ms. Kirkendoll – and thereby violated her Fourth Amendment rights –  by acting as an assisting officer during the April 21, 2009 incident.

139.

Alternatively, Defendants Owens, Hutto, Branyon, Thacker, and Millsaps can be held liable as accomplices to Defendant William's unlawful seizure under the doctrine of bystander liability.  See, e.g., Skrtich v. Thornton, 280 F.3d 1295,

1301 (11th Cir. 2002).  Defendants Owens, Hutto, Branyon, Thacker, and Millsaps

saw Defendant Williams' illegal seizure (i.e., were confronted with the illegal

seizure).   Defendants Owens, Hutto, Branyon, Thacker, and Millsaps had taken an

oath to uphold the law and to prevent individuals (including other police officers)

from engaging in unlawful behavior and thus had a duty and possessed the power

to prevent the seizure.  However, Defendants Owens, Hutto, Branyon, Thacker,

and Millsaps chose not to act to prevent the unlawful seizure of Ms. Kirkendoll.

140.

Defendant Max Bacon was also a bystander to Ms. Kirkendoll's unlawful

seizure because he saw Ms. Kirkendoll being illegally seized (i.e., was confronted

with the illegal seizure), possessed the power to prevent the seizure by directing

Defendants Williams, Hutto, Owens, and Branyon not to enforce the ordinance

against Ms. Kirkendoll, and chose not to act to prevent the seizure.  Accordingly,

Defendant Max Bacon may also be held liable as an accomplice in the unlawful

seizure of Ms. Kirkendoll under the bystander liability doctrine.  Id.

141.

Upon information and belief, Defendants Williams, Hutto, Owens, Branyon,

Thacker, and Millsaps would have taken basic P.O.S.T. training and knew or

should have known that Ms. Kirkendoll's use of profanity during a town meeting is

protected speech under the First Amendment to the United States Constitution and they thus knew or should have known that Ms. Kirkendoll had not violated any law and could not be lawfully seized.

142.

Although Defendant Williams falsely and maliciously noted in his Incident/Investigation Report that he smelled a strong odor of alcohol on Ms. Kirkendoll at the time of her arrest,  Ms. Kirkendoll was not under the influence of alcohol at <u>any</u> point during the course of the evening and was not charged with being under the influence of alcohol.  Consequently, Defendant Williams' false accusation that Ms. Kirkendoll was under the influence of alcohol could not have served as a valid basis for seizing her.

143.

Defendant City of Smyrna can be held liable for the violation of Ms. Kirkendoll's right to be free of unlawful seizure of her person pursuant to <u>Monell v. Dept. of Soc. Serv.,</u> 436 U.S. 658 (1978) because the unconstitutional Smyrna ordinance constitutes a "policy" adopted by Defendant City of Smyrna – by and through its agents – that was the driving force behind this violation.  Indeed, upon information and belief, Defendant City of Smyrna – by and through its agents –

directed Defendants Williams, Hutto, Owens, Branyon, Thacker, and Millsaps to seize Ms. Kirkendoll's person if she said anything that was arguably in violation of Smyrna Local Ordinance 66-33.

144.

Ms. Kirkendoll's arrest was without probable cause and was objectively unreasonable.  She committed no violation of Georgia law and the ordinance that Defendants Williams, Hutto, Owens, Branyon, Thacker, Millsaps, Max Bacon, and City of Smyrna – by and through its agents – utilized to facilitate Ms. Kirkendoll's unlawful seizure was clearly unconstitutional on its face.

145.

In violating Ms. Kirkendoll's rights under the Fourth Amendment to the United States Constitution, Defendants Williams, Owens, Hutto, Branyon, Thacker, Millsaps, Max Bacon, and City of Smyrna – by and through its agents – directly and proximately caused Ms. Kirkendoll to suffer unlawful arrest, detention, anguish, embarrassment and humiliation.

146.

Upon information and belief, the overwhelming majority of ordinance violations are dealt with by citation and not by arrest.  The fact that Defendant City of Smyrna – by and through Defendant Max Bacon and other agents – directed, and that

45

Defendants Williams, Owens, Hutto, Branyon, Thacker, and Millsaps used, the most extreme measure -- an unlawful detention of Ms. Kirkendoll's liberty -- for such a minor ordinance violation shows that the true motivation of their actions was to retaliate against Ms. Kirkendoll and suppress her constitutional rights.

## COUNT FOUR

## VIOLATION OF 42 U.S.C. § 1985 (Conspiracy to Violate Civil Rights)

147.

The allegations of paragraphs 16, 18, 21, 33-37, 48-51 are incorporated as though fully set forth herein.

148.

Upon information and belief, Defendant Max Bacon and Defendant City of Smyrna –by and through its agents – were upset and humiliated by Ms. Kirkendoll's speech and actions during the March 1, 2009 speech to Smyrna City Council and were also upset and embarrassed by her other numerous public criticisms that had accused them of possible incompetence and corruption and accused them of turning a blind eye to drug and immigration laws.

149.

Consequently, upon information and belief, Defendant Max Bacon and Defendant City of Smyrna –by and through its agents – wanted to silence Ms.

Kirkendoll and ensure that Ms. Kirkendoll was not able to speak or otherwise express herself during the April 21, 2009 Smyrna Town Hall Meeting

150.

To ensure Ms. Kirkendoll's silence during the Smyrna Town Hall meeting, Defendant Max Bacon and Defendant City of Smyrna (by and through its agents), upon information and belief, conspired and agreed with City officials and City law enforcement - including Defendants Williams, Black, Hutto, Owens, Branyon, Thacker, and Millsaps - prior to the meeting to violate Ms. Kirkendoll's First Amendment rights by taking immediate adverse action against her if she did anything that could arguably be in violation of Smyrna Local Ordinance 66-33.

151.

Defendant Williams realized Ms Kirkendoll's arrest was unlawful and tried to fabricate other reasons to justify the arrest.  Consequently, Defendant Williams falsely and maliciously noted in his Incident/Investigation Report that he smelled a strong odor of alcohol on Ms. Kirkendoll at the time of her arrest.   Ms. Kirkendoll was not, however, under the influence of alcohol at any point during the course of the evening and was not charged with being under the influence of alcohol.   Thus, Defendant Williams' false accusation that Ms. Kirkendoll was under the influence of alcohol could not have served as a valid basis for violating her civil rights.

152.

Such a conspiracy constitutes a violation of 42 U.S.C. § 1985.

153.

In conspiring against Ms. Kirkendoll, Defendants Max Bacon, Williams, Black, Owens, Hutto, Branyon, Thacker, Millsaps, and City of Smyrna – by and through its agents – directly and proximately caused a violation of Ms. Kirkendoll's constitutional rights, anguish, embarrassment, and her unlawful seizure, arrest, imprisonment, and prosecution.

## COUNT FIVE

## FALSE IMPRISONMENT

154.

The allegations of paragraphs 57-79 are incorporated as though fully set forth herein.

155.

Defendant Williams detained Ms. Kirkendoll when he deprived her of her liberty by grabbing her arm to forcibly escort her out of the auditorium where the Smyrna Town Hall meeting was being held, placing her in handcuffs, and securing her in the back of a police car without her consent.

156.

Defendants Hutto, Owens, and Branyon detained Ms. Kirkendoll when they deprived her of her liberty by helping Defendant Williams forcibly escort her out of the auditorium where the Smyrna Town Hall meeting was being held, place her in handcuffs, and secure her in the back of a police car without her consent.

157.

Defendant Thacker detained Ms. Kirkendoll when he deprived her of her liberty by transporting her to jail while she was secured in the back of a police car against her will.

158.

Upon information and belief, Defendant Millsaps detained Ms. Kirkendoll by acting as an "assisting officer" during the April 21, 2009 incident.

159.

The detention of Ms. Kirkendoll was unlawful because it occurred pursuant to an unconstitutional ordinance.

160.

Upon information and belief, Defendants Williams, Hutto, Owens, Branyon, Thacker, and Millsaps would have taken basic P.O.S.T. training and knew or should have known that Ms. Kirkendoll's use of profanity during a town meeting is protected speech under the First Amendment to the United States Constitution and

thus knew or should have known that there was no valid basis for her

imprisonment.

161.

Although Defendant Williams falsely noted in his Incident/Investigation Report

that he smelled a strong odor of alcohol on Ms. Kirkendoll at the time of her arrest,

Ms. Kirkendoll was not under the influence of alcohol at <u>any</u> point during the course

of the evening and was not charged with being under the influence of alcohol.

Consequently, Defendant Williams' false accusation that Ms. Kirkendoll was under

the influence of alcohol could not have served as a valid basis for imprisoning her.

162.

Ms. Kirkendoll was therefore falsely imprisoned in violation of O.C.G.A. §

16-5-41.

163.

Alternatively, Defendants Owens, Hutto, Branyon, Thacker, and Millsaps

can be held liable as accomplices to Defendant William's unlawful imprisonment

of Ms. Kirkendoll under the doctrine of bystander liability.  <u>See, e.g.</u>, <u>Skrtich v.</u>

<u>Thornton</u>, 280 F.3d 1295, 1301 (11th Cir. 2002).  Defendants Owens, Hutto,

Branyon, Thacker, and Millsaps were observed Defendant Williams' unlawful

imprisonment.   Defendants Owens, Hutto, Branyon, Thacker, and Millsaps had

taken an oath to uphold the law and to prevent individuals (including other police officers) from engaging in unlawful behavior and thus possessed a duty and the power to prevent the imprisonment.  However, Defendants Owens, Hutto, Branyon, Thacker, and Millsaps did not to act to prevent the unlawful imprisonment.

164.

Defendant Max Bacon, having been informed of Ms. Kirkendoll's unlawful imprisonment, did not prevent it and thus may also be held liable as an accomplice in the unlawful imprisonment of Ms. Kirkendoll under the bystander liability doctrine.  Id.

165.

At the time of Ms. Kirkendoll's detention, Defendants Williams, Owens, Hutto, Branyon, Thacker, and Millsaps were all employed by the Defendant City of Smyrna, were acting within the scope of their employment, and were acting with the apparent and actual authority of the Defendant City of Smyrna.  Therefore, Defendant City of Smyrna can also be held liable for Mr. Kirkendoll's false imprisonment under the theory of respondeat superior.

166.

In unlawfully imprisoning Ms. Kirkendoll, Defendants Williams, Owens, Hutto, Branyon, Thacker, and Millsaps directly and proximately caused Ms. Kirkendoll to suffer anguish, embarrassment and humiliation.

## COUNT SIX

## FALSE ARREST

167.

The allegations of paragraphs 57-79 are incorporated as though fully set forth herein.

168.

Defendant Williams arrested Ms. Kirkendoll when he restrained her liberty by grabbing her arm to forcibly escort her out of the auditorium where the Smyrna Town Hall meeting was being held, placing her in handcuffs, and securing her in the back of a police car without her consent.

169.

Defendants Hutto, Owens, and Branyon arrested Ms. Kirkendoll when he restrained her liberty by helping Defendant Williams forcibly escort her out of the auditorium where the Smyrna Town Hall meeting was being held, place her in handcuffs, and secure her in the back of a police car without her consent.

170.

Defendant Thacker arrested Ms. Kirkendoll when he restrained her liberty by transporting her to jail while she was secured in the back of a police car against her will.

171.

Upon information and belief, Defendant Millsaps arrested Ms. Kirkendoll by acting as an "assisting officer" and restraining her liberty during the April 21, 2009 incident.

172.

The arrest of Ms. Kirkendoll was malicious because it was effectuated in direct retaliation for her exercise of her First Amendment right to free speech, out of personal spite, and in reckless disregard of her constitutional rights.

173.

Ms. Kirkendoll was arrested without probable cause because she was arrested under an unconstitutional ordinance.  Upon information and belief, Defendants Williams, Hutto, Owens, Branyon, Thacker, and Millsaps would have taken basic P.O.S.T. training and knew or should have known that Ms. Kirkendoll's use of profanity was protected speech under the First Amendment to the United States Constitution and thus knew or should have known that Ms.

Kirkendoll had not violated any law and could not be lawfully arrested.

174.

Although Defendant Williams falsely and maliciously noted in his Incident/Investigation Report that he smelled a strong odor of alcohol on Ms. Kirkendoll at the time of her arrest,  Ms. Kirkendoll was not under the influence of alcohol at any point during the course of the evening and was not charged with being under the influence of alcohol.  Consequently, Defendant Williams' false accusation that Ms. Kirkendoll was under the influence of alcohol could not have served as a valid basis for arresting her.

175.

Ms. Kirkendoll was therefore falsely arrested in violation of O.C.G.A. § 51-7-1.

176.

Alternatively, Defendants Owens, Hutto, Branyon, Thacker, and Millsaps can be held liable as accomplices to Defendant William's unlawful arrest under the doctrine of bystander liability.  See, e.g., Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002).  Defendants Owens, Hutto, Branyon, Thacker, and Millsaps observed Defendant Williams' unlawful arrest.   Defendants Owens, Hutto, Branyon, Thacker, and Millsaps had taken an oath to uphold the law and to prevent

individuals (including other police officers) from engaging in unlawful behavior and thus possessed a duty and the power to prevent the arrest.  However, Defendants Owens, Hutto, Branyon, Thacker, and Millsaps chose not to act to prevent the unlawful arrest.

177.

Defendant Max Bacon, having been informed of Ms. Kirkendoll's unlawful arrest, did not prevent it and thus may also be held liable as an accomplice in the unlawful imprisonment of Ms. Kirkendoll under the bystander liability doctrine. Id.

178.

When they arrested Ms. Kirkendoll, Defendants Williams, Owens, Hutto, Branyon, Thacker, and Millsaps were all employed by the Defendant City of Smyrna, were acting within the scope of their employment, and were acting with the apparent and actual authority of Defendant City of Smyrna.  Therefore, Defendant City of Smyrna can also be held liable for Ms. Kirkendoll's false arrest under the theory of respondeat superior.

179.

In falsely arresting Ms. Kirkendoll, Defendants Williams, Owens, Hutto, Branyon, Thacker, and Millsaps directly and proximately caused her to suffer unlawful prosecution, anguish, embarrassment, and humiliation.

## COUNT SEVEN

## MALICIOUS PROSECUTION

180.

The allegations of paragraphs 86-98 are incorporated as though fully set forth herein.

181.

Defendant City of Smyrna –by and through its agents – prosecuted Ms. Kirkendoll pursuant to a valid accusation for violating Smyrna Local Ordinance § 66-33.

182.

The prosecution of Ms. Kirkendoll was done with malice and without probable cause.

183.

Defendant City of Smyrna – by and through its attorneys and at the direction of Defendant Max Bacon – continued to prosecute Ms. Kirkendoll despite being presented with the facts and the law, which showed that Smyrna Local Ordinance

§ 66-33 was unconstitutional and thus could not constitute a valid basis for prosecution.

184.

Although Defendant Williams falsely and maliciously noted in his Incident/Investigation Report that he smelled a strong odor of alcohol on Ms. Kirkendoll at the time of her arrest, Ms. Kirkendoll was not under the influence of alcohol at <u>any</u> point during the course of the evening and was not charged with being under the influence of alcohol. Consequently, Defendant Williams' false accusation that Ms. Kirkendoll was under the influence of alcohol was not a basis for prosecuting her.

185.

Ultimately, the charges against Ms. Kirkendoll were nolle prossed and the prosecution was terminated in her favor.

186.

As a result of the malicious prosecution by Defendant City of Smyrna acting through its agents, Ms. Kirkendoll has suffered severe emotional distress, is fearful of exercising her constitutional rights, and has been ridiculed by other citizens of the City of Smyrna.

187.

Defendant City of Smyrna –by and through its agents – thereby maliciously prosecuted Ms. Kirkendoll in violation of O.C.G.A. § 51-7-44.

## COUNT EIGHT

## CIVIL BATTERY

188.

The allegations of paragraphs 57-79 are incorporated as though fully set forth herein.

189.

Defendant Williams committed a battery against Ms. Kirkendoll when he grabbed her arm so hard that he bruised her and forcefully pulled her out of the auditorium where the Smyrna Town Hall meeting was being held.

190.

Defendants Hutto, Owens, and Branyon committed a battery against Ms. Kirkendoll when they assisted Defendant Williams with physically escorting Ms. Kirkendoll out of the auditorium where the Smyrna Town Hall meeting was being held.

191.

The aforementioned physical contact with Ms. Kirkendoll's person was

unlawful because Ms. Kirkendoll was forcefully pulled out of the auditorium and arrested pursuant to an unconstitutional ordinance.  Furthermore, Defendant Williams, Owens, Hutto, and Branyon knew or should have known that it was unlawful to seize and arrest her for saying "this is bullshit".

192.

The aforementioned physical contact with Ms. Kirkendoll would have been offensive to a reasonable person.

193.

Although Defendant Williams falsely and maliciously noted in his Incident/Investigation Report that he smelled a strong odor of alcohol on Ms. Kirkendoll at the time of her arrest,  Ms. Kirkendoll was not under the influence of alcohol at any point during the course of the evening and was not charged with being under the influence of alcohol.  Consequently, Defendant Williams' false accusation that Ms. Kirkendoll was under the influence of alcohol could not have served as a valid basis for committing a battery against her.

194.

Alternatively, Defendants Owens, Hutto, Branyon, Thacker, and Millsaps can be held liable as accomplices to Defendant William's battery under the doctrine of bystander liability.  See, e.g., Skrtich v. Thornton, 280 F.3d 1295, 1301

59

(11th Cir. 2002).  Defendants Owens, Hutto, Branyon, Thacker, and Millsaps were confronted with Defendant Williams' battery, possessed the power to prevent the battery, and chose not to act to prevent the battery.  Id.

195.

As a bystander to the battery of Ms. Kirkendoll who was confronted with Defendant Williams' battery, possessed the power to prevent the battery, and chose not to act to prevent the battery, Defendant Max Bacon may also be held liable as an accomplice in the battery of Ms. Kirkendoll under the bystander liability doctrine.  Id.

196.

At the time of the battery, Defendants Williams, Hutto, Owens, and Branyon were employed by Defendant City of Smyrna, were acting within the scope of their employment, and were acting with the apparent and actual authority of Defendant City of Smyrna.  Consequently, Defendant City of Smyrna can also be held liable for the battery of Ms. Kirkendoll under the theory of respondeat superior.

**PRAYERS FOR RELIEF**

WHEREFORE, on the basis of the foregoing, Plaintiff prays that this Court:

(1)     Enter an award of economic, compensatory, general, and special

damages in an amount to be determined by the enlightened conscience of

the jury against defendants City of Smyrna, et al;

(2)     Enter a preliminary and permanent injunction against Defendants, their officers, agents, successors, employees, attorneys, and those acting in concert with them, from any future, non-pending prosecution under the unconstitutional ordinance;

(3)     Award Ms. Kirkendoll punitive damages in the amount to be determined by the enlightened conscience of the jury against defendants City of Smyrna, et al;

(4)     Grant to Plaintiff a jury trial on all issues so triable;

(5)     Award to Plaintiff the costs of the action and reasonable attorney's fees, as provided by 42 U.S.C. § 1988 and federal and state law;

(6)     Grant any and all additional relief as this Court deems proper and just.

DATED: This 8th day of September, 2011.

By:     _s/ Cynthia L. Counts_____
        Cynthia L. Counts
        Georgia Bar No. 190280

Counts Law Group
400 Colony Square, Suite 2020
1201 Peachtree Street, NE
Atlanta, Georgia 30361
Telephone: (404)685-8271
Facsimile: (404)521-0413
Email: ccounts@lawcounts.com

        s/ Kenneth B. Hodges_____

Kenneth B. Hodges
Georgia Bar No. 359155

Ashe, Rafuse & Hill, LLP
1355 Peachtree Street, N.E.
Suite 500
Atlanta, GA 30309
Telephone: (404) 253-6005
Facsimile: (404) 253-6060
Email: kenhodges@asherafuse.com

s/ Gerald Weber_____
Gerald Weber
Georgia Bar No. 744878

Law Offices of Gerry Weber, LLC
P.O.S.T. Office Box 5391
Atlanta, Georgia 31107
Telephone: (404) 522-0507
Email: wgerryweber@gmail.com

Local Rule 7.1(D) Certificate

This is to certify that the foregoing SECOND AMENDED VERIFIED COMPLAINT has been prepared with one of the font and point selections approved by the Court in LR 5.1B: Times New Roman, 14 point.

s/ Cynthia L. Counts_____
Cynthia L. Counts, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARY KIRKENDOLL,                    )
                                    )
Plaintiff                           )
                                    )
v.                                  )
                                    )
CITY OF SMYRNA,                     )          CIVIL ACTION FILE
MAX BACON, Mayor,                   )          NO. 1:11-cv-01306-CAP
RANDY BLACK, and                    )
OFFICERS WILLIAMS,                  )
OWENS, THACKER,                     )
HUTTO, MILLSAPS, and                )
BRANYON, Officers of the City of    )
Smyrna Police Department,           )
                                    )
Defendants.                         )

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed this **SECOND**

**VERIFIED AMENDED COMPLAINT** with the Clerk of Court using the

CM/ECF system which will automatically send email notification of such filing to

the following counsel of record:

Harvey S Gray
Matthew A. Ericksen
Gray, Rust, St. Amand, Moffett & Brieske, LLP
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, GA 30326

Respectfully submitted this 8th day of September, 2011.

s/ Cynthia L. Counts
Cynthia L. Counts
Georgia Bar No. 190280

Counts Law Group
400 Colony Square, Suite 2020
1201 Peachtree Street NE
Atlanta, Georgia  30361
Phone:  (404) 550-6233
Fax:     (404) 521-4013
email:  ccounts@lawcounts.com