# **Exhibit A**

INCIDENT/INVESTIGAT... REPORT

| | | | |
|---|---|---|---|
| Case# | 09-040516 | | |
| Date / Time Reported | 04/21/2009  20:41  Tue | | |
| Last Known Secure | 04/21/2009  20:41  Tue | | |
| At Found | 04/21/2009  20:41  Tue | | |

**INCIDENT DATA**

Agency Name: *Smyrna Police Department*

ORI: *GA 0330400*

Location of Incident: *200 Village Green Cir Se, Smyrna GA 30080-*

Premise Type:

Zone/Tract: A

Activity

| | Crime Incident(s) | (Com) | Weapon / Tools | | | |
|---|---|---|---|---|---|---|
| #1 | *Disorderly Conduct*  *5311* | M | Entry | Exit | Security | |
| #2 | Crime Incident | ( ) | Weapon / Tools | | | Activity |
| | | | Entry | Exit | Security | |
| #3 | Crime Incident | ( ) | Weapon / Tools | | | Activity |
| | | | Entry | Exit | Security | |

MO

**VICTIM**

# of Victims: *1*   Type: SOCIETY/PUBLIC   Injury:   Domestic: N

| | Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| V1 | *State Of Georgia* | 1, | Age | | | | | |

Home Address:     Home Phone:

Employer Name/Address:     Business Phone:   Mobile Phone:

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|

**OTHERS INVOLVED**

CODES:  V= Victim (Denote V2, V3)  O = Owner (if other than victim)   R = Reporting Person (if other than victim)

| Type: | | Injury: | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Code | Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
| | | | Age | | | | | |

Home Address:     Home Phone:

Employer Name/Address:     Business Phone:   Mobile Phone:

| Type: | | Injury: | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Code | Name (Last, First, Middle) | Victim of Crime # | DOB | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
| | | | Age | | | | | |

Home Address:     Home Phone:

Employer Name/Address:     Business Phone:   Mobile Phone:

**PROPERTY**

1 = None  2 = Burned  3 = Counterfeit / Forged   4 = Damaged / Vandalized  5 = Recovered  6 = Seized  7 = Stolen  8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**Status**

Officer/ID#: *WILLIAMS, G. F. (26413)*

Invest ID#: (0)     Supervisor: (0)

Complainant Signature:

Case Status: Cleared By Arrest  04.21.2009     Case Disposition:     Page 1

CIDENT/INVESTIGATION REPORT    By REATON COURT01   04/22/2009 10:29
Page 2

*Smyrna Police Department*      Case#   09-040516

| Status Codes | 1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown | | | | | |
|---|---|---|---|---|---|---|
| | IBR | Status | Quantity | Type Measure | Suspected Type | Up to 3 types of activity |
| D | | | | | | |
| R | | | | | | |
| U | | | | | | |
| G | | | | | | |
| S | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Assisting Officers
*OWENS, K (24449). THACKER, B (24436). HUTTO, J C (24616). MILLS4PS, L G (24199). BRANYON, S. (22060)*

Suspect Hate / Bias Motivated:

NARRATIVE

REPORTING OFFICER NARRAT

| | | OCA |
|---|---|---|
| Smyrna Police Department | | 09-040516 |
| Victim | Offense | Date / Time Reported |
| Society | DISORDERLY CONDUCT | Tue 04/21/2009 20.41 |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

ON 042109 AT APPROXIMATELY 2041 HOURS I WAS WORKING SECURITY IN PLAIN CLOTHES. AT 200 VILLAGE GREEN CIRCLE, SMYRNA COMMUNITY CENTER. I OBSERVED THE OFFENDER: MARY EVANS KIRKENDOLL, DOB: 032256, W/F, SITTING IN A CHAIR NEAR THE FRONT OF THE AUDITORIUM. I HEARD HER GET UPSET AND SAY, "CAN WE TALK ABOUT SOMETHING MORE INPORTANT, WHEN A SPEAKER WAS SPEAKING AT THE POTIUM. AFTER APPROXIMATELY TEN MINUTES, KIRKENDOLL GOT OUT OF HER SEAT, AND STATED TO MAYOR BACON, THE CITY OF SMYRNA MAYOR," YOU WON THIS TIME. THIS IS BULLSHIT" WHILE IN THE PRESENCE OF SMALL CHILDREN AND FAMILY MEMBERS.
I WAS SITTING IN THE BLEACHERS NEAR THE FRONT OF THE AUDITORIUM AND OBSERVED KIRKENDOLL BEGIN TO WALK IN FRONT OF ME. I MADE CONTACT WITH HER ON THE WALKWAY NEAR THE BLEACHERS AND ADVISED I WAS OFFICER WILLIAMS WITH THE SMYRNA POLICE DEPARTMENT, AND ATTEMPTED TO ESCORT HER OUT OF THE AUDITORIUM. AS I ATTEMPTED TO ESCORT HER OUT OF THE AUDITORIUM. I SMELLED AN ODOR OF AN ALCOHOLIC BEVERAGE COMING FROM HER PERSON.
OFFICER HUTTO. CPL OWENS. AND OFFICER BRANYON ASSISTED ME WITH ESCORTING KIRKENDOLL OUT OF THE BUILDING, AND SHE BEGAN TO PULL AWAY FROM ALL OFFICERS. KIRKENDOLL WAS PLACED INTO RESTRAINTS AND TRANSPORTED TO THE SMYRNA JAIL UNDER CITATION NUMBER 428659. BY CPL THACKER. KIRKENDOLL WAS CHARGED WITH DISORDERLY CONDUCT.
[04/21/2009 22:54. GWILLIAMS. 47. SPD]

# Exhibit B

1306-GASe (DOCUMENT UNIFORM TRAFFIC CITATION   Page 6 of 83   428659

SS NR-GA 0330400
NCIC Number                          Citation Number

## CITY OF SMYRNA POLICE DEPARTMENT

Upon APP.L (Day) ▼21 (Year) 2009 at 2041 ☐ P.M.
Month

Operator License No. 049616339
License Class or Type ____ State GA Endorsements ____ Expires 2014
Name KIRKENDALL, MARY EVANS
(Last)        (First)        (Middle)

Address 1078 OAKVIEW DR SK
City SMYRNA State GA Zip Code 30080
DOB 0235 56 Hair RED Hgt 502 Wgt 125 Sex WHF Eyes BRO
Veh. Yr. ____ Make ____ Style ____ Color ____
____ " ____ Yr. ____ State ____
Registration No. ____
COMMERCIAL DRIVER LICENSE ☐YES ☐NO   COMMERICAL VEHICLE ☐YES ☐NO   ACCIDENT ☐YES ☐NO

(ONE VIOLATION PER CITATION)  ☐ DRIVER REQUESTED ACCURACY CHECK ☐ VASCAR ☐ LASER ☐ RADAR
Within the State of Georgia, did commit the following offense: SPEEDING - Clocked by ☐ PATROL VEHICLE ☐ OTHER
(Serial # ____ ) at ____ MPH in a ____ zone
Calibration / Check ____
☐ DUI (Test Administered: ☐ BLOOD ☐ BREATH ☐ URINE ☐ OTHER) DUI Test Results ____

TEST ADMINISTERED BY (If Applicable)

OFFENSE (Other than above) DISORERLY CONDUCT
In Violation of Code Section 06-5 of ☐ State Law ☒ Local Ordinance
REMARKS SUB CO Community spilled CASE wr

CASE #09040516

| WEATHER | ROAD (A) (B) | TRAFFIC | LIGHTING | COMMERCIAL VEHICLE INFORMATION |
|---|---|---|---|---|
| ☐ Clear | ☐ Dry ☐ Concrete | ☐ Light | ☐ Daylight | ☐ Commercial Vehicle Violation |
| ☐ Cloudy | ☐ Wet ☑ Blacktop | ☐ Medium | ☐ Darkness | |
| ☐ Raining | ☐ Ice ☐ Dirt | ☐ Heavy | ☐ Other | ☐ Hazardous Material Violation (PLACARD) |
| ☑ Other | ☐ Other ☐ Other | | | |

County of COBB and ____ miles ____ at (city) SMYRNA
on 200 VILLAGE C-E at rear peak or within (city) SMYRNA
at / on (secondary location) COMMYNITY
OFFICER (Print) ____ Badge # ____ Div. ____

You are hereby ordered to appear in Court to answer to this charge on the 30 day of June
209 at 040 ☒ A.M. ☐ P.M. in the SMYRNA MUNICIPAL Court
at 2800 KING STREET
City SMYRNA , Georgia.

NOTICE: This citation shall constitute official notice to you that failure to appear in Court at the date and time stated on this citation to dispose of the cited charges against you shall cause the designated Court to forward your driver's license number to the Department of Motor Vehicle Safety, and your driver's license shall be suspended. (Georgia Code 17-6-11 and 40-5-56) The suspension shall remain in effect until such time as there is a satisfactory disposition in this matter or the Court notifies the Department of Motor Vehicle Safety.

LICENSE DISPLAYED IN LIEU OF BAIL ☐ YES ☐ NO RELEASED TO ____
SIGNATURE ACKNOWLEDGES SERVICE OF THIS SUMMONS AND RECEIPT OF COPY OF SAME.

SIGNATURE ____

ARRESTING OFFICER'S CERTIFICATION
The undersigned has just and reasonable grounds to believe, and does believe, that the person named herein has committed the offense set forth, contrary to law.

SIGNATURE ____ Badge # ____
Signature of Arresting Officer                          COURT COPY

AUTHORIZED AND APPROVED PURSUANT TO:
CODE 40 - 13 - 1 - D.P.S. REG. 570.19

# Exhibit C

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

STATE OF GEORGIA,           )
        Plaintiff            )
                             ) Criminal Action File No.
v.                           ) 10-M-2991
                             )
MARY EVANS KIRKENDOLL        )
        Defendant            )

## DEFENDANT'S MOTION TO DISMISS ON CONSTITUTIONAL GROUNDS AND/OR DEMURRER

Defendant Mary Kirkendoll hereby moves the Court to dismiss the charge pending against her on the grounds that: (1) the charge is based upon a municipal ordinance, Smyrna Local Ordinance § 66-3, that is facially overbroad, void for vagueness, and violative of the United States and Georgia Constitutions; and (2) Smyrna Ordinance § 6-33 is unconstitutional as applied here because it was used in a content-based manner to prohibit speech that is protected by the United States and Georgia Constitutions.[1]

### I. INTRODUCTION

*Justice Frankfurter put it succinctly ... when he said that '[o]ne of the prerogatives of American citizenship is the right to criticize public men and measures.' Such criticism, inevitably, will not always be reasoned or moderate; public figures as well as public officials will be subject to 'vehement, caustic, and sometimes unpleasantly sharp attacks.'*

Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 53-55 (1988) (citations omitted).

This criminal prosecution has occurred because a woman attending a town hall meeting said "This is bullshit" while walking out of the meeting. In a blatant effort to scare one of its vocal critics into permanent silence, the city arrested her under its disorderly conduct ordinance and now

---

[1] Defendants reserve the right to file renewed motions to dismiss or supplemental authorities.

prosecutes her for the very type of political speech that is at the heart of the First Amendment's protection. The state cannot sustain its burden of justifying this arrest. The arrest here arose out of alleged behavior which (a) involved protected speech and (b) took place at a town hall meeting, a public forum.   Not only is the law under which Defendant is currently being prosecuted unconstitutional on its face, but application of the law to Defendant's conduct in this case violates her constitutional rights.

## II. STATEMENT OF FACTS

Mary Kirkendoll is a longtime resident of the City of Smyrna (hereinafter "the City"). She frequently made public comments, including statements at public meetings, regarding her concerns over depressed home prices and poor quality of life within the City, which she attributed to poor decisions made by City government. On April 21, 2009, Ms. Kirkendoll attended a Town Hall meeting arranged by the City. This meeting was held so that City Council members could answer questions from Smyrna citizens.

A question and answer session was scheduled for the close of the presentation. Ms. Kirkendoll submitted a question on the note card she was given. However, once the question-and-answer session began, the Council members only selected questions that put the City in a positive light. Ms. Kirkendoll's question was bypassed because it was not of the viewpoint desired by the City.

Frustrated with the City's failure to address the tough issues, Ms. Kirkendoll decided to leave the meeting. While walking towards the exit door, Ms. Kirkendoll passed Mayor Max Bacon. She stated to Mr. Bacon, "You win tonight, Mayor." As she continued toward the exit, Ms. Kirkendoll turned to the audience and stated, "This is bullshit – they are never going to tell the truth."Ms.

Kirkendoll continued to proceed to the exit, walking past numerous rows of seats. After she had walked about fifteen feet past her chair and towards the exit, a man dressed in khakis and a plain shirt approached her from behind and forcefully grabbed her, taking her arm tightly in his hand and startling her. Ms. Kirkendoll told the man she was leaving on her own and there was no need to escort her out. The man continued to aggressively pull Ms. Kirkendoll out the door, unnecessarily holding her arms behind her with intense force, pinching her, and repeatedly stating, "Quit resisting."

Only after he had walked to the exit of the auditorium with Ms. Kirkendoll did the man reveal himself as a police officer. He handcuffed and arrested Ms. Kirkendoll and took her to jail. Ms. Kirkendoll was charged with violating Smyrna Ordinance § 66-3, which prohibits "any act of public indecency, quarrel or fight, or use obscene, vulgar or profane language within the city, or to otherwise act in a disorderly manner or behave in any way contrary to public peace or morality to the disturbance of any citizen of the city."

## III. ARGUMENT

The charge against Ms. Kirkendoll must be dismissed because it does not survive constitutional scrutiny. First, the municipal ordinance under which Ms. Kirkendoll was charged is unconstitutional on its face because it is (a) overbroad, (b) vague, and (c) violative of the United States and Georgia constitutions. Moreover, the ordinance is also unconstitutional as applied because the government used the ordinance as a means to prosecute Ms. Kirkendoll based on the content of her speech.

## A. Smyrna Municipal Ordinance § 6-33 is Unconstitutional on its Face

Smyrna Ordinance § 6-33 is overbroad, vague, and gives unbridled discretion to law enforcement, and therefore violates the First and Fourteenth Amendments to the United States Constitution and Article I, section I, paragraphs 1-3, 5, 7, and 9 of the Georgia Constitution.

### 1. Section 6-33 is unconstitutionally overbroad.

An ordinance may be voided as overbroad "if in its reach it prohibits constitutionally protected conduct." Grayned, 408 U.S. at 114. "'[W]hen state statutes or ordinances tend to burden or infringe fundamental individual rights, the state must tailor its statute so as to accomplish its goals with a minimal interference with individual liberties.'" Bullock v. City of Dallas, 248 Ga. 164, 169 (1981) (quoting Ruff v. Marshall, 438 F. Supp. 303, 306 (M.D. Ga. 1977)). Essentially, the overbreadth doctrine is an exception to the general rule of standing, under which a litigant as to whom the statute may be constitutionally applied is permitted to challenge the statute so long as the statute could be applied in a manner that violates the free speech rights of others. See Broadrick v. Oklahoma, 413 U.S. 601, 610-12 (1973). The underlying rationale for the overbreadth doctrine is that "the very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 798 (1984). Facial challenge of a statute as overbroad is a mechanism for "prevent[ing] the statute from chilling the First Amendment rights of other parties not before the court." Secretary of State of Maryland v. Joseph H. Munson Co., 467 U.S. 947, 958 (1984).

a.  **Georgia's Constitution requires the state to regulate speech in least restrictive means possible**

Under the Georgia Constitution, a statute is "unconstitutionally overbroad if it stifles expression or conduct that it otherwise protected by the Constitution." Fielden v. Topuchton, 280 Ga. 444 (2006). In Fielden, the Georgia Supreme Court struck down an ordinance governing the disruption of public meetings because it was overbroad. The statute provided that "[a] person who recklessly or knowingly commits any act which may reasonably be expected to prevent or disrupt a lawful meeting, gathering, or procession is guilty of a misdemeanor." The Court concluded that the statute was overbroad because the statute did not require (1) knowledge or intent that the act disrupt the meeting or (2) any actual or imminent disruption. The Court explained that the statute could only pass muster if it were narrowed so as to only criminalize "those activities *intended* to prevent or disrupt a lawful meeting *and* which either *cause the untimely termination* of the lawful meeting or *substantially impair the conduct* of the lawful meeting." Id. (emphasis added); see also Lewis v. City of New Orleans, 415 U.S. 130 (1974) (ordinance making it unlawful to "curse or revile or to use obscene or opprobrious language" toward police unconstitutionally overbroad); District of Columbia v. Guery, 376 A.2d 834, 838-39 (D.C. App. 1977) (finding that an order barring disruption at meetings could only stand if narrowly interpreted to require that the "loud, threatening, or abusive language be *disruptive or nearly so,*" and to require that the actions were commenced with the "specific *intent* of causing disruption.").

While federal constitutional standards are rigorous where free speech is involved, the test under the Georgia Constitution is even more exacting. The Georgia Supreme Court stated in Statesboro Publ'g Co. v. City of Sylvania, 271 Ga. 92 (1999), that "[o]ur state constitution provides

–5–

even broader protection of speech than the first amendment." Id. at 95. In striking down a municipal ordinance that had prohibited the distribution of printed materials in yards, driveways, walkways, or porches in the City of Sylvania, the court held that, unlike the First Amendment of the federal constitution, Georgia's constitution "require[s] the government to adopt the least restrictive means for regulating content-neutral speech." Id. Hence, state constitutional law mandates that the state "narrowly draw its regulations to suppress no more speech than is necessary to achieve [its] goals," particularly where the law would inhibit "political, religious and personal speech." Id.

b.   **Section 6-33 is overbroad because it proscribes constitutionally protected conduct**

While Smyrna Ordinance § 6-33 obviously abridges "political, religious and personal speech," it is not narrowly tailored as to pose the least restrictive regulation on speech. Indeed, the Georgia Supreme Court has not hesitated to strike laws similar to the one at issue here as facially overbroad and violative of the First Amendment. See Cunningham v. State, 260 Ga. at 833 (1991) (striking law criminalizing "profane" or "lewd" bumper stickers on motor vehicles, holding that profane and lewd speech is protected under the First Amendment and the statute was therefore an impermissible content-based restriction on speech).

This case is controlled by McKenzie v. State, 279 Ga. 265, 266 (2005), wherein the Georgia Supreme Court struck down a Georgia statute because it was unconstitutionally vague and overbroad on its face under the First Amendment. The defendant stipulated to the government's evidence and was convicted in a bench trial of violating O.C.G.A. § 46-5-21, which criminalizes telephonic communication that is "obscene, lewd, lascivious, [or] filthy." The defendant appealed his conviction, arguing that O.C.G.A. § 46-5-21 was an overbroad infringement on the right to free speech. Id. at 265. The Georgia Supreme Court unanimously reversed the conviction, finding that

–6–

the statute was an unconstitutionally overbroad content-based regulation of speech. Id. at 267-68. The Court first held that the statute was a content-based restriction on speech because it specifically targeted telephonic speech that was "obscene, lewd, lascivious, filthy, or indecent." Id. at 267. Noting that content-based restrictions on speech are "presumptively invalid and the Government bears the burden to rebut that presumption," the Court observed that "expression this is indecent but not obscene is protected by the First Amendment." Id. at 266-67.

Because the statute was content-based, the Court held that it must survive strict scrutiny, meaning the government was required to show that the statute "promote[d] a compelling state interest" and was the "least restrictive means to further the articulated interest." Id. at 267. In reviewing the statute at issue, the Court noted that "it is clear the statute lacks the precision that the First Amendment requires when a statute regulates the content of speech." Id. (internal quotations omitted). The statue was not the least restrictive means necessary to achieve the government's interest because: (1) Instead of applying only to obscene speech, it applied to speech that was merely indecent. In a footnote, the court noted its prior holding in Cunningham v. State, 260 Ga. at 833 (1991), wherein it observed that "lewd" speech is much broader than "obscene" speech. (2) Instead of making such speech illegal only when directed at minors, the statute made such speech illegal when heard by adults. (3) Instead of applying only to speech unwelcome to the listener and intended to harass, it applies to speech welcomed by the listener and spoken with intent to please or amuse. id.

Just like the Georgia statute at issue in McKenzie, Smyrna Ordinance § 6-33 is a content-based regulation of speech that fails strict scrutiny because it is not the least restrictive means necessary to achieve the government's interest. Here, the ordinance is a content-based restriction on

speech because it only applies to speech that is "obscene, vulgar, or profane."[2]  Therefore, strict scrutiny applies and the government must prove that the ordinance is the least restrictive means possible to achieve its interest.  See McKenzie, 279 Ga. at 266-67.  Assuming but not conceding that public order is a compelling government interest, Smyrna Ordinance § 6-33 certainly is not the least restrictive means available to achieve that interest.

In striking similarity to the overbreadth problems with the statute in McKenzie, Smyrna's ordinance "lacks the precision" necessary to survive strict scrutiny because it (1) prohibits speech that is merely vulgar or profane, and therefore protected by the First Amendment; (2) criminalizes profane and vulgar language regardless of the listener without limiting the prohibition to situations where children are listening or present; and (3) applies to speech welcomed by the listener and spoken with intent to please or amuse. Indeed, Smyrna's ordinance is so sweeping that it criminalizes numerous potential instances of everyday, lawful -- and undeniably protected -- speech.  For example, the law appears to prohibit:

- participating vigorously in public debate on a particularly controversial matter in a manner that someone might find "disorderly;" and

- using a profane word while participating in a heated political debate with other individuals, even if the debate was in a private home within city limits; and

- engaging in spirited political debate with another citizen in a manner that could be construed as a "quarrel."

In short, because § 6-33 criminalizes protected political and non-political expression, it is

---

2 It is well-settled that profanity enjoys constitutional protection under the First Amendment.  The United States Supreme Court made clear in Cohen v. California that even the word "fuck" enjoyed constitutional protection so long as it was not specifically directed towards another as a "fighting word." 403 U.S. 15, 23 (1971). The majority reasoned that it is nearly impossible to differentiate offensive and accepted speech. "For, while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true that one man's vulgarity is another's lyric." Id. at 25.

unconstitutionally overbroad. Thus, Smyrna Ordinance § 6-33 is violative of the First Amendment, and must be stricken.

### 2. Section 6-33 is unduly vague.

The Due Process Clause of the Fourteenth Amendment forbids the state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const., amend. 14; see also Ga. Const. art. 1, § 1 ("No person shall be deprived of life, liberty or property except by due process of law"). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). This is because "vague laws offend several important values," namely, providing fair warning to law-abiding citizens, avoiding arbitrary and discriminatory enforcement of the law, and not chilling free speech. Id. at 108-09. Due process "requires that an individual be informed as to what actions a governmental authority prohibits with such clarity that he is not forced to speculate at the meaning of the law." Armstrong v. Mayor & Aldermen of Savannah, 250 Ga. 121, 123 (1982).

To withstand a vagueness challenge, a law, by its terms, must give a person of ordinary intelligence sufficiently precise warning as to the proscribed conduct and provide "explicit standards" to those who enforce the law. Grayned, 408 U.S. at 108; see Rose v. Locke, 423 U.S. 48, 49-50 (1975); Satterfield v. State, 260 Ga. 427, 428 (1990). If it does not, an individual cannot be held criminally responsible for the conduct that he or she could not have fairly understood to have been illegal. See Rose, 423 U.S. at 49. A greater degree of specificity is required of criminal laws because the potential loss of liberty is involved. See Satterfield, 260 Ga. at 427-28.

Section 6-33 prohibits any conduct or speech that is "disorderly" or that is "contrary to public peace or morality to the disturbance of any citizen of the city." But Ms. Kirkendoll could not

-9-

reasonably have understood what the statute criminalized and thus could not have conformed her behavior to the law accordingly. Indeed, it cannot be said that the statute puts any person of ordinary intelligence on notice of the particular conduct that is forbidden. The law has at least two defects in this regard.

First, it gives no definition whatsoever of the term "disturbance." What creates a "disturbance," and hence, violative of § 6-33, is therefore wholly subjective. Conduct or speech that is a "disturbance" to some citizens may not be a "disturbance" to others. See, e.g., Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971) (striking down anti-loitering ordinance that outlawed assembling "in a manner annoying to persons passing by" on vagueness grounds because "[c]onduct that annoys some people does not annoy others"). Second, the law impermissibly turns on a citizen's determination of whether particular speech is a "disturbance." A violation of this law depends largely on the reactions of unspecified people other than the speaker, reactions that are often difficult, if not impossible, to predict. In all events, it is well-settled that "[l]isteners' reaction to speech is not a content-neutral basis for regulation." Forsyth County v. Nationalist Movement, 505 U.S. 123, 134 (1992).

These deficiencies, acting in concert, force law-abiding citizens to guess at the sensitivities and reaction of every other "citizen of the city" and encourages self-censorship. The law does not "define the criminal offense with sufficient definiteness," especially where the law does not specify which attendees' unfavorable reactions might trigger criminal prosecution. Instead, it requires law-abiding individuals to "speculate at the meaning of the law." Armstrong, 250 Ga. at 123. Such an ambiguous law may not be enforced.

3.   **Section 6-33 is unconstitutional because it grants unbridled discretion to law enforcement officers.**

In addition, the vague nature of this ordinance provides police officers unfettered power to decide who is in violation of the ordinance and who is not. This sort of <u>de facto</u> law making by law enforcement officials is impermissible. See <u>Nationalist Movement</u>, 505 U.S. at 132-33. "Under our democratic system of government, lawmaking is not entrusted to the moment-to-moment opinions of a policeman on his beat. To let a policeman's command become equivalent to a criminal statute comes dangerously close to making our government one of men rather than laws." <u>Bullock</u>, 248 Ga. at 166-67.

Smyrna Ordinance § 6-33 effectively makes the meaning of the law subject to the "moment-to-moment opinions of a police officer on his beat." <u>Id.</u>; <u>see</u> <u>Satterfield</u>, 260 Ga. at 428 (invalidating anti-public indecency and disorderly conduct ordinance in part because it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an <u>ad hoc</u> and subjective basis"). The deficiencies in the statute allow a police officer's determination as to whether or not the law has been broken to be colored by their personal opinion as to the content of the speech.

The circumstances leading to Ms. Kirkendoll's arrest illustrate the expansive power afforded by Smyrna Ordinance § 6-33. Surely Smyrna police officers have often overhead the utterance of the word "bullshit" or other profanity within city limits. Indeed, it certainly would seem incredulous to believe that any given officer had not himself uttered the word "bullshit" within city limits at one time or another. Yet, others who say profane words are treated differently from Ms. Kirkendoll because they are not arrested or even threatened with arrest.

Enforcement of the law according to the whim of a few violates the free speech rights of the speakers. The reaction of a police officer or a public official to speech is not a valid content neutral basis for curbing speech. See <u>Nationalist Movement</u>, 505 U.S. at 134. "'Regulations which permit

-11-

the government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment.'" Id. at 135 (quoting Regan v. Time, Inc., 468 U.S. 641, 648-649 (1984)). Just as it is impermissible to make some marchers pay more for a permit because police or local officials believe their speech is unpopular, see National Movement, 505 U.S. at 134, so too the government may not arrest some speakers at a public meeting (but not others) based on the reactions of listeners or law enforcement officers. Because the statute sweeps within its ambit a wide range of protected speech, it must be struck down.

**B.     Smyrna Ordinance § 6-33 is unconstitutional as applied to Ms. Kirkendoll's political activity**

Finally, the charges should be dismissed because application of Smyrna Ordinance § 6-33 to Ms. Kirkendoll's conduct violates the First Amendment. Because the alleged activity out of which these charges arose took place at a Town Hall meeting held by the City Council, plainly a public forum, the government's conduct is subject to the highest level of scrutiny under the First Amendment. Under the stringent "strict scrutiny" test, the government may place time, place, or manner restrictions on speech in a public forum only if those restrictions are content neutral, narrowly tailored to serve a significant governmental interest, and leave ample alternative channels for communication. See Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). The state's invocation of § 6-33 against Ms. Kirkendoll was not a narrowly tailored response to her legitimate political advocacy, much less the "least intrusive" manner of maintaining order; nor has the law been enforced in a content neutral fashion. Statesboro Publ'g Co., 271 Ga. at 95.

1.   **The City failed to narrowly tailor its actions aimed at maintaining order at public meetings.**

Ms. Kirkendoll agrees that states and municipalities have an interest in focusing speakers and other meeting participants on the topics at hand and in preventing excessive disruption of meetings. See, e.g., Jones v. Heyman, 888 F.2d 1328, 1333 (11th Cir. 1989). Still, to survive strict scrutiny, the state's efforts to maintain order must be narrowly tailored to serve those goals. See Ward, 491 U.S. at 791 (quoting Clark, 468 U.S. at 82); see also Community for Creative Non-Violence v. Turner, 893 F.2d 1387, 1392 (D.C. Cir. 1990). Moreover, under the Georgia Constitution, government officials must employ the "least intrusive" means of effecting its objectives.

Here, the Smyrna City Council went well beyond what was reasonable to keep the meeting on topic and in order. The Council members could have allowed Ms. Kirkendoll to briefly address the audience and the elected officials. A council member could have warned her that her speech was disruptive. The Smyrna police could have let Ms. Kirkendoll leave the meeting room on her own accord, as she was in the process of so doing, without having her arrested. All of these alternatives presented less restrictive measures. None were pursued. Indeed, a review of the facts will reveal no "imminent spectator violence or disorder" that could not have been handled by "usual crowd control techniques." Sabel v. White, 250 Ga. 640, 642 (1983).

The hasty decision to have Ms. Kirkendoll immediately arrested and forcibly removed was not a reasonable response to her legitimate exercise of political expression, and was hardly "the least restrictive means" for restoring order at the meeting. Just as a school has several remedies for dealing with student protesters short of resorting to criminal prosecution and should resort to them first, here the Commission had other methods at its disposal for maintaining order during the meeting, but did not pursue them. See Washington v. State, 126 Ga. App. 180, 181-82 (1972) (application of law to facts troubling given availability of other less drastic discipline options). Under the circumstances, the state's complete failure to attempt to utilize more reasonable measures to restore order at the Town hall meeting violates Ms. Kirkendoll's First Amendment rights.

### 2.   The City unconstitutionally suppressed Ms. Kirkendoll's political speech because of the content of her message.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." Rosenberger v. Rector and Visitors of the Univ. of Virginia, 515 U.S. 819, 828 (1995) (citations omitted); see also R.A.V. v. St. Paul, 505 U.S. 377, 382 (1992). As Justice Scalia explained,

> Displays containing some words — odious racial epithets, for example — would be prohibited to proponents of all views. But 'fighting words' that do not themselves invoke race, color, creed, religion, or gender . . . would seemingly be usable ad libitum in the placards of those arguing in favor of . . . tolerance and equality, but could not be used by those speakers' opponents . . . . [The city] has no such authority to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensbery Rules.

Id. at 391-92 (emphasis added). The government may not open up a meeting to the public and then prevent individuals from speaking simply because it does not wish to hear what those individuals have to say. See Pesek v. City of Brunswick, 794 F. Supp. 768, 784 (N.D. Ohio 1992) (city council

-14-

could not prevent citizens from raising issues concerning employment by public employees); see also Hickory Fire Fighters Ass'n, Local 2653 v. City of Hickory, 656 F.2d 917, 922 (4th Cir. 1981) ("municipality cannot 'open a meeting to the public and then prohibit the . . . speech [of attendees] simply because of what [that group represents] or what its representatives wish to say.'"); cf. Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 730 (C.D. Cal. 1996) ("It is difficult to imagine a more content-based prohibition on speech than this policy, which allows expression of two points of view (laudatory and neutral) while prohibiting a different point of view (negatively critical) on a particular subject matter.").

Unfortunately, the City of Smyrna treated Ms. Kirkendoll differently based on her view on a matter of public importance.[3] First, the City Council read the questions of other audience members who expressed favorable viewpoints of the city, but the Council refused to read her question aloud because it raised tough questions the City did not want to answer. Then, the City arrested her for expressing her frustration that the City refused to allow public criticism. When, as here, the government's actions were so clearly based upon the content of a defendants' speech, the resulting prosecution cannot stand.

CONCLUSION

Smyrna Ordinance § 6-33 is unconstitutional on its face and as applied to Defendant. For all of the foregoing reasons, the Court should dismiss the charges against Defendant.

Respectfully submitted this 14th day of June, 2010.

---

[3]Note, however, that whether or not (and if so, to what extent) the City of Smyrna was actually hostile to Ms. Kirkendoll's point of view is irrelevant. The key is that it took action to silence her in part because of her message. See, e.g., Good News/Good Sports Club v. School Dist. of Ladue, 28 F.3d 1501, 1507 (8th Cir. 1994) (no proof of government opposition or hostility to viewpoint necessary to prove viewpoint discrimination).

Cynthia L. Counts, Esq.
Georgia Bar No. 190280
Amanda G. Hyland, Esq.
Georgia Bar No. 325115
Attorneys for Defendants
1201 Peachtree Street NE
400 Colony Square, Suite 2020
Atlanta, GA 30361
(404) 685-8271


/s/ Gerry Weber (with express permission)
Gerry Weber, Esq.
Georgia Bar No. 744878
Attorney for Defendant
Law Office of Gerald Weber
PO Box 5391
Atlanta GA 31107
(404) 522-0507

—16—

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARY KIRKENDOLL, )
)
Plaintiff )
)
v. )
)
CITY OF SMYRNA, )            CIVIL ACTION FILE
MAX BACON, Mayor, )          NO. 1:11-cv-01306-CAP
RANDY BLACK, and )
OFFICERS WILLIAMS, )
OWENS, THACKER, )
HUTTO, MILLSAPS, and )
BRANYON, Officers of the City of )
Smyrna Police Department, )
)
Defendants. )

## VERIFICATION

I, Mary Kirkendoll, personally appeared before the undersigned notary

public, and say under oath that I am the Plaintiff in the above-styled action and that

the facts stated in this Second Amended Verified Complaint are true and correct to

the best of my knowledge and belief.

DATED this _8_ day of September, 2011.

Mary Kirkendoll

SWORN to and SUBSCRIBED
Before me this _8_ day of September, 2011.

Alex Williams

Notary Public
My commission expires _6-8-2012_