IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARY KIRKENDOLL, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SMYRNA, | ) | CIVIL ACTION FILE |
| MAX BACON, Mayor, | ) | NO. 1:11-cv-01306-CAP |
| RANDY BLACK, and | ) | |
| OFFICERS WILLIAMS, | ) | |
| OWENS, THACKER, | ) | |
| HUTTO, MILLSAPS, and | ) | |
| BRANYON, Officers of the City of | ) | |
| Smyrna Police Department, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE,
MOTION TO STRIKE REDUNDANT AND IMMATERIAL MATTERS,
AND MOTION TO DISMISS CONSPIRACY COUNT</u>**

Plaintiff, by and through the undersigned counsel, hereby responds to *Defendants' Motion to Dismiss Second Amended Complaint or, in the Alternative, Motion to Strike Redundant and Immaterial Matters, and Motion to Dismiss Conspiracy Count*, respectfully showing this Court the following:

# I. INTRODUCTION

This § 1983 case arises out of the arrest of a political activist, Plaintiff Mary Kirkendoll, under an unconstitutional ordinance for publicly uttering the phrase "[t]his is bullshit – they will never tell the truth" while voluntarily leaving a City of Smyrna Town Hall meeting. In a concerted effort to scare its most vocal critic into silence, Defendant City of Smyrna, acting through its Defendant agents, unlawfully arrested, imprisoned, and prosecuted Ms. Kirkendoll for engaging in speech that lies at the heart of the First Amendment's protection. Not only is the ordinance under which Ms. Kirkendoll was arrested unconstitutional on its face, but application of the ordinance to Ms. Kirkendoll's speech in this case violates her constitutional rights.

# II. STATEMENT OF PROCEDURAL FACTS

On August 24, 2011, this Court requested that Ms. Kirkendoll file a second amended complaint. See Order [Doc. 23] at 3. Specifically, this Court was concerned that because Ms. Kirkendoll's first amended complaint incorporated all preceding paragraphs into each count, it was difficult to "determine which facts are alleged to support which claim." Id. at 2. Additionally, this Court was concerned by Ms. Kirkendoll's collective reference to "Defendants" instead of specific

references to the exact conduct each individual Defendant is alleged to have done. Id.

Ms. Kirkendoll therefore filed a second amended complaint against Defendants on September 8, 2011, alleging: (1) unconstitutional violation of her right to free speech under the First Amendment, (2) unconstitutional retaliation, (3) unconstitutional seizure of her person, (4) conspiracy to violate her civil rights, (5) false imprisonment, (6) false arrest, (7) malicious prosecution, and (8) battery. See Second Amended Complaint [Doc. 24].

To assist Defendants and this Court in "determin[ing] which facts are alleged to support which claim," Ms. Kirkendoll has incorporated into each claim *only* those specific factual allegations that would support the claim. See Order [Doc. 23] at 2. Moreover, in each claim, Ms. Kirkendoll has specified "what conduct each specific defendant is alleged to have done" as well as the theory under which each defendant can be held liable. Id.

Out of an abundance of caution, Ms. Kirkendoll also alleged all facts and legal doctrines that would support her claims for relief. More specifically:

- Paragraphs 12–21 describe Ms. Kirkendoll's political advocacy and criticism, including the specific subject matters of her criticism, the specific entities targeted by her criticism, the inflammatory nature of her criticism, and the effect of her criticism on those entities;

- Paragraphs 22–24 describe the retaliatory acts that City of Smyrna

employees have effectuated against Ms. Kirkendoll in the past as a direct result of her vocal criticism;

- Paragraphs 25–33 describe a particularly provocative town hall presentation given by Ms. Kirkendoll that exhibits the hostile reaction City of Smyrna employees have toward her political activism;

- Paragraphs 34–39 describe the formulation of the conspiracy to silence Ms. Kirkendoll;

- Paragraphs 40–52 describe the Town Hall meeting Ms. Kirkendoll attended and the events that led up to her arrest;

- Paragraphs 53–79 describe Ms. Kirkendoll's arrest and imprisonment;

- Paragraphs 80–82 describe the training and knowledge of the law enforcement defendants;

- Paragraphs 83–85 describe the damages Ms. Kirkendoll has incurred;

- Paragraphs 86-98 describe the prosecution of Ms. Kirkendoll; and

- The remaining paragraphs describe Ms. Kirkendoll's claims for relief, including the facts and legal doctrines that support them.

All of these allegations help establish the requisite plausibility of Ms. Kirkendoll's claims.

### III.  ARGUMENT AND CITATION OF AUTHORITY

**A.  Ms. Kirkendoll has Complied With the Pleading Standard Set forth in F.R.C.P. 8(a)(2) and Further Defined in Iqbal.**

The United States Supreme Court explained in Ashcroft v. Iqbal that the pleading standard for "all civil actions" – including § 1983 actions such as this one

– is governed by Rule 8(a)(2) of the Federal Rules of Civil Procedure. 129 S. Ct. 1937, 1953 (2009). In interpreting the pleading standard required by Rule 8(2)(a), the Supreme Court held in Iqbal that even though the rule does not mandate "detailed factual allegations," the rule "*does call for sufficient factual matter*, accepted as true, to state a claim for relief that is *plausible* on its face." Id. at 1940 (emphasis added). The Supreme Court further explained that a "plausible" claim for relief exists when the plaintiff pleads *enough factual content* to allow the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged."[1] Id. (emphasis added). Thus, the sufficiency of Ms. Kirkendoll's second amended complaint depends exclusively on whether her allegations give rise to plausible claims for relief. Indeed, as the Supreme Court in Iqbal emphasized, a complaint that states a plausible claim for relief will survive a motion to dismiss. Id. at 1950.

Here, the detailed allegations in Ms. Kirkendoll's second amended complaint make all of her claims for relief plausible such that Defendants' Motion to Dismiss should be denied. Id. To determine whether Ms. Kirkendoll's

---

[1] In other words, the second prong's "plausibility requirement" is not synonymous with a "probability requirement," but merely requires that misconduct can be *reasonably inferred* from the facts alleged. Id.

5

complaint is sufficiently pled in that it states plausible claims for relief, this Court should follow the two-pronged test that the Supreme Court created in Iqbal: (1) First, this Court must ignore all conclusory allegations set forth in the second amended complaint, and (2) Second, this Court must then examine the remaining non-conclusory allegations, accept them as true, and determine whether – in light of context, experience, and common sense – they "*plausibly* give rise to a claim for relief." Id. at 1250.  Although not required to do so, Ms. Kirkendoll sets forth below each claim for relief and explains how the allegations in her second amended complaint allow this Court to reasonably infer that she is entitled to relief.

> **(1) Violation of the First Amendment Pursuant to 42 U.S.C. § 1983 (Ordinance is Unconstitutionally Vague, Overbroad, and Chills Free Speech)**

To establish that her arrest, imprisonment, and prosecution under Smyrna Local Ordinance § 66-3 violated her First Amendment right to free speech, Ms. Kirkendoll must show that the ordinance is unconstitutional.  The Georgia Supreme Court has recently held that a similar law prohibiting the disruption of a public meeting was unconstitutional, and the United States Supreme Court has famously held that using an expletive in a non-disruptive manner in a public

courthouse is protected speech under the First Amendment. See Cohen v. California, 403 U.S. 15, 20 (1971); State v. Fielden, 629 S.E.2d 252 (Ga. 2006).

In Fielden, the Georgia Supreme Court struck down on overbreadth grounds an ordinance stating that "[a] person who recklessly or knowingly commits any act which may reasonably be expected to prevent or disrupt a lawful meeting, gathering, or procession is guilty of a misdemeanor." 629 S.E.2d at 254. The Court concluded that the ordinance was overbroad because it did not require: (1) knowledge or intent that the act disrupt the meeting, or (2) any actual or imminent disruption. Id. at 256. The Court explained that the statute could pass muster only if it were narrowly tailored so as to criminalize only "those activities *intended* to prevent or disrupt a lawful meeting and which either *cause the untimely termination* of the lawful meeting or *substantially impair the conduct* of the lawful meeting." Id. (emphasis added). This Court can reasonably infer that Smyrna Local Ordinance § 66-3 is unconstitutionally overbroad for the same reasons set forth by the Georgia Supreme Court in Fielden. First, Ms. Kirkendoll did not intend to disrupt the Town Meeting. Second Amended Complaint [Doc. 24] at ¶ 61. Second, as is evidenced on the videotape in the Solicitor's file, her statement and exit neither caused the meeting to "ultimately terminate" nor did they "substantially impair the conduct of the meeting." Id. at ¶ 59.

Smyrna Local Ordinance § 66-3 unquestionably imposes a content-based restriction on speech, because it restricts a particular message, idea, or subject matter (i.e., obscenity, vulgarity, and profanity). Id. at ¶ 38; see also Brown v. Entertainment Merchants Association, No. 08-1448, slip op. at 5 (U.S. June 27, 2011). Thus, , the ordinance is "presumptively invalid" unless the government can prove that it either: (1) falls within a category of historically unprotected speech such as obscenity or fighting words, or (2) survives strict scrutiny. Id.

Ms. Kirkendoll's utterance of the word "bullshit" may have been vulgar, but this Court can reasonably infer that it does not constitute obscenity or fighting words for purposes of a constitutional analysis. Indeed, speech is not considered obscene unless it is, "in some significant way, erotic." See Cohen, 403 U.S. at 20 (finding the f____word, though distasteful, did not fall within the category of obscenity). Furthermore, "fighting words" must be likely to "provoke any person to retaliation" or violence. Texas v. Johnson (holding that burning the American flag does not fall within the constitutionally protected class of fighting words because no reasonable onlooker would have perceived the act as an "invitation to exchange fisticuffs"). Here, Ms. Kirkendoll's profane language was a political statement that cannot reasonably be characterized as "erotic" or provoking

violence during the Town Hall Meeting. Second Amended Complaint [Doc. 24] at ¶ 60.

Lastly, this Court can reasonably infer that the ordinance cannot survive strict scrutiny, as this is a "demanding standard" and it is "rare that a regulation restricting speech because of its content will ever be permissible." Brown, No. 08-1448, slip op. at 14. To survive strict scrutiny, the government must show that the restriction on speech is narrowly tailored to promote a compelling government interest. Id. The City most likely cannot fulfill this standard. Supreme Court precedent is clear that serving as guardians of the public morality by removing offensive words like "bullshit" from the public vocabulary is impermissible and is not a compelling reason for suppressing speech. Cohen, 403 U.S. at 23, 26.

### (2) Violation of the First Amendment (Retaliation)

To state a First Amendment retaliation claim, Ms. Kirkendoll must allege facts that give rise to a reasonable inference that: (1) she engaged in constitutionally protected activity, (2) she suffered an adverse action, and (3) a causal link exists between the protected activity and the adverse action. See, e.g., Stavropoulos v. Firestone, 361 F.3d 610 (11th Cir. 2004).

Here, this Court can reasonably infer that Ms. Kirkendoll engaged in pure political speech that is protected by the First Amendment when she publicly

criticized the City's policies and its agents' failure to enforce immigration and drug laws through public speeches, protests, and letters of complaint. R. A. V. v. St. Paul, 505 U. S. 377, 422 (1992) ("Our First Amendment decisions have created a rough hierarchy in the constitutional protection of speech in which ***political speech occupies the highest, most protected position***") (emphasis added); see also Second Amended Complaint [Doc. 24] at ¶¶ 13-15, 17-20.

     Furthermore, because Ms. Kirkendoll's public criticisms had historically made a mockery of the City and essentially accused officials and law enforcement of corruption and illegality, this Court can reasonably infer that Defendant City of Smyrna, by and through its agents, and the agent Defendants possessed a strong desire to silence her vocal criticisms. Id. at ¶¶ 13-21, 25-35. Indeed, Defendant City of Smyrna, by and through its agents, hyped up law enforcement at the meeting specifically to quell Ms. Kirkendoll's speech, and her ultimate arrest is documented by a police report that alleges false facts. Id. at ¶¶ 36, 77. Moreover, Ms. Kirkendoll was immediately silenced when she attempted to talk to a reporter before the meeting had even begun. Id. at ¶ 47-51. Accordingly, it is reasonable for this Court to infer that Ms. Kirkendoll's arrest, confinement, and prosecution under an unconstitutional ordinance for merely uttering the word "bullshit" was an

"adverse action" caused by – and in direct retaliation to – her highly disparaging political speech.

    **(3)    <u>Violation of the Fourth Amendment (Unlawful Seizure)</u>**

To establish that she was unlawfully seized, Ms. Kirkendoll must allege facts that reasonably infer: (1) there was an intentional government seizure of her person and (2) such seizure of her person was unreasonable. <u>See, e.g.</u>, <u>Brower v. County of Inyo</u>, 489 U.S. 593, 596, 599 (1989). A "seizure" occurs when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen" such that the citizen is not free to leave. <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n. 16 (1968). Here, Ms. Kirkendoll's factual allegations indisputably show that she was "seized" when she was grabbed, arrested, placed in a police car, and held in a jail cell. Second Amended Complaint [Doc. 24] at ¶¶ 62-63, 65, 68-73. This Court can reasonably infer that the seizure of Ms. Kirkendoll was unreasonable, as probable cause for an arrest cannot be premised on an unconstitutional ordinance.

    **(4)    <u>§ 1985(3) Conspiracy to Violate Civil Rights</u>**

To set forth a claim for conspiracy to violate civil rights under 42 U.S.C. § 1985(3), Ms. Kirkendoll must show facts that reasonably infer the existence of: (1) an agreement between two or more persons to (2) deprive her of her civil rights.

Dickerson v. Alachua Cty. Comm'n, 200 F.3d 761, 767 (11th Cir. 2000). Here, this Court can reasonably infer that a conspiracy was formed to suppress Ms. Kirkendoll's First Amendment right to free speech. The following facts make it plausible that a conspiracy was formed to silence her: (1) Ms. Kirkendoll persistently criticized Defendant City of Smyrna officials and law enforcement in a negative, public manner (¶¶ 13-21), (2) during a March 1, 2009 city council meeting, Ms. Kirkendoll had given a particularly provocative speech that reasonably would have angered and upset city employees (¶¶ 25-33), (3) an unusually large number of law enforcement was present at the Town Hall Meeting (¶ 36), (4) the City's Director of Communications immediately silenced Ms. Kirkendoll prior to the meeting the moment Ms. Kirkendoll attempted to speak (¶¶ 47-51), (5) forcibly grabbing and arresting Ms. Kirkendoll's for uttering "bullshit" while voluntarily leaving the building was unreasonable and unwarranted (¶¶ 55-65), (6) the ordinance under which Ms. Kirkendoll was arrested is unconstitutional on its face (¶ 38), and (7) officials and law enforcement had expressed disgust toward Ms. Kirkendoll in the past (¶¶ 21-24, 26-27). These facts, when viewed together, make it reasonable to infer that a conspiracy was formed to ensure that Ms. Kirkendoll would not be given any opportunity to speak or create a scene during the Town Meeting.

Moreover, the intra-corporate doctrine does not bar Ms. Kirkendoll's conspiracy claim. Because Defendants belong to separate departments within the government (i.e., police department and city council) instead of a single department within the government, Defendants cannot be characterized as a "single legal entity." See Hollins v. Fulton County, 2011 WL 1331978 (11th Cir. 2011) (holding that the intra-corporate doctrine applied when all of the conspirators were a part of the county's Sheriff's department); Albra v. City of Fort Lauderdale, 232 Fed. Appx. 855, 890 (11th Cir. 2007) (holding that the intra-corporate doctrine applied when all of the conspirators worked in the county jail).

**(5)** **False Imprisonment**

To set forth a claim for false imprisonment pursuant to O.C.G.A. § 16-5-41, Ms. Kirkendoll must allege facts reasonably inferring that: (1) she was detained such that she was restrained through force or fear, and (2) the detention was unlawful. See, e.g., Haile v. Pittman, 389 S.E.2d 564, 565 (1989). Here, a detention undeniably occurred as is explained *supra* in the "Unlawful Seizure" section. See also Lancaster v. State, 281 Ga. App. 752, 754 (2006) (holding that a detention occurred when the defendant pulled the plaintiff into an alley again her will by taking a firm hold of her arm). This Court can also reasonably infer that

Ms. Kirkendoll's detention was unlawful based again on the arguments set forth *supra* in the "Unlawful Seizure" section.

**(6)** **False Arrest**

Ms. Kirkendoll can establish a claim for false arrest under O.C.G.A. § 51-7-1 by alleging facts reasonably inferring that: (1) she was arrested, (2) the arrest was malicious, and (3) the arrest was without probable cause. Todd v. Byrd, 640 S.E.2d 652, 658 (Ga. App., 2006). For the same reasons set out in the "Unlawful Seizure" section, *supra*, there can be no probable cause based on an arrest under an unconstitutional ordinance, and the reasons set forth in the "Retaliation" section, *supra*, support a finding of malice.

**(7)** **Malicious Prosecution**

To establish malicious prosecution under O.C.G.A. § 51-7-44, Ms. Kirkendoll must allege facts giving rise to a reasonable inference that: (1) she was prosecuted for a criminal offense, (2) the prosecution was instigated under a valid warrant, accusation, or summons; (3) the prosecution was terminated in her favor; (4) malice; (5) want of probable cause; and (6) damage. See, e.g., Sherrill v. Stockel, 252 Ga.App. 276, 278 (2001).

Here, Ms. Kirkendoll was prosecuted pursuant to a valid accusation for her violation of Smyrna Local Ordinance §66-3. Second Amended Complaint [Doc.

14

24] at ¶ 91.  The charges against Ms. Kirkendoll were ultimately nolle prossed, thus terminating the criminal prosecution in her favor.  Id. at ¶¶ 97-98.  As a result of the prosecution, Ms. Kirkendoll has been afraid to exercise her free speech, has suffered emotional distress, and has faced ridicule throughout the Smyrna community.  Id. at ¶¶ 83-85.  Lastly, this Court may reasonably infer that she was maliciously prosecuted without probable cause for the same reasons stated *supra* in the "Retaliation" section, in addition to the fact that the prosecution repeatedly refused to dismiss the case due to political pressure and in spite of the clear unconstitutionality of the Smyrna Ordinance.  Id. at ¶¶ 88-90, 92-94.

**(8)   Battery**

To establish a civil claim for battery, Ms. Kirkendoll must allege facts sufficient to infer that she was touched or contacted in an offensive manner. Hendricks v. Southern Bell Tel. & Tel. Co., 193 Ga. App. 264, 264 (1989).  Here, Ms. Kirkendoll was undeniably touched in an offensive manner as is explained *supra* in the "Unlawful Seizure" section.

**IV.   CONCLUSION**

Ms. Kirkendoll believes her second amended complaint fully complies with F.R.C.P. 8(a)(2) in that her allegations allow this Court to reasonably infer Defendants' liability.  Id. at 3.  Ms. Kirkendoll does not agree that her second

amended complaint constitutes a "shotgun pleading" or anything other than a good faith attempt to provide Defendants and this Court with the allegations necessary to establish the plausibility of her claims for relief.

In the event this Court finds that Ms. Kirkendoll's second amended complaint contains redundant and immaterial allegations, she will of course remove such allegations.

Respectfully submitted this 27th day of October, 2011.

 s/ Cynthia L. Counts\_\_\_
Cynthia L. Counts
Georgia Bar No. 190280

The Counts Law Group
400 Colony Square, Suite 2020
1201 Peachtree Street NE
Atlanta, Georgia  30361
Phone:  (404) 550-6233
Fax:     (404) 521-4013
email:  ccounts@lawcounts.com

/s Kenneth B. Hodges_____
Kenneth B. Hodges
Georgia Bar No. 359155

Ashe, Rafuse & Hill, LLP
1355 Peachtree Street, N.E.
Suite 500
Atlanta, GA 30309
Telephone: (404) 253-6005
Facsimile: (404) 253-6060
Email: kenhodges@asherafuse.com

/s Gerald Weber_____
Gerald Weber
Georgia Bar No. 744878

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Telephone: (404) 522-0507
Email: wgerryweber@gmail.com

## Local Rule 7.1(D) Certificate

This is to certify that the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE REDUNDANT AND IMMATERIAL MATTERS, AND MOTION TO DISMISS CONSPIRACY COUNT** has been prepared with one of the font and point selections approved by the Court in LR 5.1B: Times New Roman, 14 point.

/s Cynthia L. Counts
Cynthia L. Counts

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARY KIRKENDOLL, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SMYRNA, | ) | CIVIL ACTION FILE |
| MAX BACON, Mayor, | ) | NO. 1:11-cv-01306-CAP |
| RANDY BLACK, and | ) | |
| OFFICERS WILLIAMS, | ) | |
| OWENS, THACKER, | ) | |
| HUTTO, MILLSAPS, and | ) | |
| BRANYON, Officers of the City of | ) | |
| Smyrna Police Department, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO STRIKE REDUNDANT AND IMMATERIAL MATTERS, AND MOTION TO DISMISS CONSPIRACY COUNT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following counsel of record:

Harvey S Gray
Matthew A. Ericksen
Gray, Rust, St. Amand, Moffett & Brieske, LLP
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, GA 30326

Respectfully submitted this 27th day of October, 2011.

s/ Cynthia L. Counts
Cynthia L. Counts
Georgia Bar No. 190280

Counts Law Group
400 Colony Square, Suite 2020
1201 Peachtree Street NE
Atlanta, Georgia  30361
Phone:  (404) 550-6233
Fax:     (404) 521-4013
email:  ccounts@lawcounts.com